## KAHN v. TRADERS INSURANCE COMPANY.

REVIEW OF ORDER GRANTING NEW TRIAL—INSURANCE—PLEADING
—EVIDENCE—AGENCY—INSTRUCTIONS.

1. A verdict for plaintiff having been, by order of the district
court, vacated and a new trial granted, the plaintiff electing
to rely upon his exceptions thereto, and to the order over-
ruling his motion for judgment upon the verdict, and de-
clining to further prosecute the action in that court, an
order thereupon entered that the action be dismissed at
plaintiff's costs, and that defendant go hence without day
and recover from the plaintiff his costs, is a final order
which is subject to review.

2. An order setting aside a verdict and granting a new trial may be the basis of a specification of error, and may be reviewed.

3. In an action on a fire insurance policy, unless the defendant has specially pleaded a defense asserted upon a failure to comply with an arbitration clause in the policy, it is error to submit to the jury any question based upon such clause.

4. Although it is provided in the policy that the loss shall not be payable "until sixty days after the proofs, certificates, plans, and specifications, and award of appraisers, herein required, shall have been rendered, and examinations perfected by assured," an award by appraisers or arbitrators is not absolutely essential to a cause of action upon the policy for a loss occurring by fire, and it is not necessary that plaintiff plead either a submission of amount of loss to appraisers and an award by them, or facts to show a breach on the part of defendant of the arbitration agreement.

5. A defense based upon an absence of compliance with the arbitration clause will not avail the defendant, where it is asserted in the answer that the policy has become absolutely void, and it does not appear that defendant at any time requested or suggested a submission of the amount of the losses to arbitration; but where it does appear that the damage was to personal property and the evidence discloses practically a total loss, and that the difference between the parties was not due to any failure to agree as to the "amount of sound value and of damage" but to the quantity of goods the assured had on hand at the time of the fire.

6. When the evidence to a fact is positive, and not disputed or questioned, it ought to be taken as an established fact, and the charge of the court should proceed upon that basis.

7. An agent of a fire insurance company authorized to make contracts of insurance, to issue policies, and to receive the premiums therefor, being intrusted with blank policies of insurance signed by the president and attested by the secretary of the company, is to be deemed to be the general agent of the company, and authorized to consent to additional insurance; and the company is bound not only by notice to him, but his knowledge of matters relating to the contract must be held to be the knowledge of the principal.

8. It is no defense to an action upon a fire insurance policy that additional insurance was procured by the assured without consent thereto being endorsed upon the policy, where the agent issuing the policy sued on did, in fact, know of and consent to the additional insurance, but through oversight failed to notify the company thereof; and where, after the fire, an adjuster of the company, with knowledge of the additional insurance, made an attempt to arrive at a mutual agreement with the assured as to the loss, without making any objection on account of the additional insurance. And the court should have so instructed the jury.

9. An instruction with reference to such additional insurance that "the defendant must show by a preponderance of the evidence that it has not waived its right" is erroneous, but not prejudicial because the matter should not have been submitted to the jury at all.

10. Insurance companies are just as much bound as the assured to endeavor to bring about a fair and equitable settlement of loss incurred, and they have no right, when such loss has occurred, to stand aloof, and cast obstacles in the way of such settlement.

11. It was not error to permit a witness who had been plaintiff's bookkeeper up to the time of the fire to refresh his memory from a schedule of the property destroyed, furnished defendant by plaintiff, which had been prepared from duplicate invoices obtained after the fire from merchants who had sold goods to plaintiff, and from recollection of the stock on hand and its condition, plaintiff's books and the original invoices having been destroyed at the fire.

12. Neither was it error to permit the witness to read the schedule to the jury in response to a question as to the amount of goods in the store at the time of the fire.

13. It was not error to permit the said witness to enumerate and state the value of certain articles alleged to have been destroyed by the fire which were not included in the proofs of loss.

14. The affidavit and schedule offered as proofs of loss were competent evidence to show compliance with the requirement of the policy that proofs of loss should be furnished.

15. As the only controversy between the adjuster and the assured was as to the amount of the claim, the claim itself

being at least tacitly admitted, certain offers of settlement made by the adjuster were admissible in evidence. They were also admissible as tending to show a waiver of the failure to endorse consent to the additional insurance.

16.   To constitute fraud or false swearing under the condition of the policy that "All fraud, or attempt at fraud, by false swearing or otherwise, shall forfeit all claim under this policy," there must be false statements, wilfully made, with respect to a material matter with the intention of thereby deceiving the insurer.

17.   One who alleges fraud must clearly and distinctly prove the same, and the proof must be clear and sufficient to satisfy the mind and conscience of the existence of the fraud.

[Commenced in District Court April 16, 1891—Decided December 1, 1893.]

Error to District Court for Laramie County.   Hon. Rich-ard H. Scott, Judge.

Action on a fire insurance policy by Gus Kahn against the Traders Insurance Company.   Verdict was for plaintiff. The district court vacated the verdict, and upon the refusal of the plaintiff to further prosecute the case in that court, and his election to stand upon his execptions to the orders vacating the verdict and overruling the motion for judgment upon the verdict, the action was ordered dismissed at plaintiff's costs, and judgment was rendered in favor of defendant for costs.   Plaintiff prosecuted error.   The material facts are sufficiently stated in the opinion.

*Walter R. Stoll,* for plaintiff in error.

The agent who issued the policy was a general agent for a limited territory with power to bind the company by his conduct, representations, and declarations, and to waive conditions of the policy.   (Wood on Ins., Sec. 419; Rivara v. Ins. Co., 62 Miss., 728; Lamberton v. Ins. Co., 39 Minn., 129; Reiner v. Ins. Co., 74 Wis., 89; German Ins. Co., v. Gray, 43 Kan., 497; Ins. Co. v. McLanathan, 11 Kan., 413; Ins. Co. v. Earle, 33 Mich., 143; Continental Ins. Co. v. Ruckman, 127

Ill., 364; Krumm v. Ins. Co., 40 O. St., 225; Gans v. Ins. Co., 43 Wis., 113; Young v. Ins. Co., 45 Ia., 377; Ins. Co. v. Fahrenkrug, 68 Ill., 467; Phœnix Ins. Co. v. Spiers,, 87 Ky., 285; Carroll v. Ins. Co., 40 Barb., 292; Lightbody v. Ins. Co., 23 Wend., 22; Post v. Ins. Co., 43 Barb., 361; Franklin v. Ins. Co., 42 Mo., 456; Richmond v. Ins. Co., 79 N. Y., 239; Eastern R. R. Co. v. Ins. Co., 105 Mass., 578; Ins. Co. v. Green, 57 Ga., 472; Rev. Stat. Wyo., Secs. 625-626.) Arbitration is not a condition precedent to the right to recover for a total loss. The objection that an award of arbitrators has not been had should be taken by answer. (Pioneer Mfg. Co. v. Ins. Co., 106 N. C., 28; Adams v. Ins. Co. (Ia.), 51 N. W., 1149; Gasser v. Sun Fire Office, 42 Minn., 315; Ins. Co. v. Wilson, 45 Kan., 250; Randall v. Amer. Ins. Co., 10 Mont., 340; Abbott's Trial Br. on Pl., Secs. 811, 816, 817.) An award of arbitration is not a condition precedent without an express stipulation to that effect. (Gere v. Ins. Co., 67 Ia., 272; Crossley v. Conn. Fire Ins. Co., 27 Fed., 30; Canfield v. Ins. Co., 55 Wis., 419; Ins. Co. v. Pulver, 126 Ill., 329; Ins. Co. v. Creighton, 51 Ga., 110; Robinson v. Ins. Co., 17 Me., 131; Reed v. Ins. Co., 138 Mass., 572; Allegre v. Ins. Co., 6 Har. & J. (Md.) 408; Hamilton v. Home Ins. Co., 137 U. S., 712; Ins. Co. v. Wilson, 45 Kan., 250.) Otherwise an agreement for arbitration is a collateral agreement only. (Hamilton v. Ins. Co., 137 U. S., 370.) Defendant must show that it made an effort to secure arbitration. (Vangindertaelen v. Ins. Co., 82 Wis., 112; Abbott's Trial Br. on Pl., 188; Ins. Co. v. Steiger, 109 Ill., 256; Wallace v. Ins. Co., 2 Fed., 659; id., 41 Fed., 743; Ins. Co. v. Badger, 53 Wis., 283; Nurney v. Ins. Co., 63 Mich., 638; Morley v. Ins. Co., 85 Mich., 210; Hutchinson v. Ins. Co., 153 Mass., 143; Ins. Co. v. Etherton, 25 Neb., 505; Randall v. Ins. Co., 10 Mont., 340; Farnum v. Ins. Co., 83 Cal., 246.)

*Lacey & Van Devanter,* for defendant in error.

An order granting a new trial, upon motion after verdict and before judgment, is not a final order from which a proceeding in error will lie. (Rev. Stat., 3126; Concord v. Run-

nels, 23 O. St., 601; Hauff v. R. R. Co., 5 Ohio C. C., 470; Artman v. West Pt. Mfg. Co., 16 Neb., 572; Menardi v. O'Malley, 3 Wyo., 327; Gramm v. Fisher, 3 Wyo., 595; Rev. Stat., 2657.) The order of dismissal was not made in course of determination of the action, but because plaintiff declined to prosecute his action further. The order was not objected nor excepted to. Asking time to present a bill of exceptions does not amount to reserving an exception. (U. S. v. Trabing, 3 Wyo., 144.) There is nothing for review. (Jackson v. Jackson, 16 O. St., 163; Wells v. Martin, 1 O. St., 386; Sutherland Stat. Const., 256; Smith v. B'd of Ed., 27 O. St., 44.) If the granting of a new trial is subject to review, the ruling will not be reversed except for a clear abuse of discretion certainly and conclusively shown by the record. (Howell v. Pugh, 25 Kan., 96; City, etc., v. Church, 29 Kan., 190; Field v. Kinnear, 5 Kan., 233; McCrum v. Corby, 15 Kan., 112; Halpin v. Nelson, 76 Ia., 427; Rubel v. McDonald, 7 Ia., 90; White v. Poorman, 24 Ia., 108; Moran v. Harris, 63 Ia., 390; Oliver v. Pace, 6 Ga., 185; Wheeler v. Robinson, 81 Ga., 303; Nagle v. Hamberger, 6 Ind., 69; Collingwood v. Ry. Co., 54 Ind., 15; Warner v. Michelstetter, 77 Wis., 647; McLimans v. City, etc., 57 Wis., 297; Drake v. Burlingame, 2 Cal., 177; Breckenridge v. Crocker, 68 Cal., 403; Fox v. So. Pac., 95 Cal., 234; Miller v. Ins. Co., 12 W. Va., 116; Demueles v. Ry. Co., 44 Minn., 436.) The several provisions of the policy construed together expressly makes arbitration a condition precedent to a right of action. Express provision to the effect is unnecessary. It may become so by clear implication. (Gasser v. Sun Fire Office, 42 Minn., 315; Saucelito v. Ins. Co., 66 Cal., 253; Adams v. Ins. Co., 70 Cal., 198; Carroll v. Ins. Co., 72 Cal., 297; Chippewa Co. v. Ins. Co., 80 Mich., 116; Gauche v. Ins. Co., 10 Fed., 347; Hamilton v. Ins. Co., 136 U. S., 242; Mosness v. Ins. Co., 52 N. W., 932; Del., etc., Canal Co. v. Coal Co., 50 N. Y., 250; Ins. Co. v. Clancy 71 Tex., 5; Wolff v. Ins. Co., 50 N. J. L., 453; Holmes v. Richet, 56 Cal., 307; Perkins v. Electric L't Co., 16 Fed., 513; Hood v. Hartshorn, 100 Mass., 117; U. S. v. Robeson, 9 Pet., 319; Pioneer Mfg. Co. v. Assurance Co., 106 N. C., 28; Fox v. R. R., 3 Wal-

lace Jr., 243; Hudson v. McCartney, 33 Wis., 331; Kurche v. Ry. Co., 34 Fed., 471; Hall v. Ins. Co., 57 Conn., 105.)   Arbitration being a condition precedent a failure thereof was not required to be affirmatively pleaded as a defense.   (Maxwell Code Pl., 80-82; Baylies Code Pl., 36 and 136; 1 Boone Code Pl., Sec. 22; Bliss Code Pl., Secs 287 and 301-2; 1 Chitty Pl. (16 Am. Ed.), Secs. 329-337; Abbotts Br. Pl., Secs. 179-190; Carroll v. Girard Ins. Co., supra; Mosness v. Ins. Co., supra; Morley v. Ins. Co., supra; Fox v. Railroad, supra; Hudson v. McCartney, supra; Jonston v. Howard, 20 Minn., 370; Boon v. Ins. Co., 37 Minn., 426; Ins. Co. v. Duke, 43 Ind., 418; Reinig v. Buffalo, 102 N. Y., 308; Selover v. Coe, 63 N. Y., 438; Doyle v. Ins. Co., 44 Cal., 264; Cowan v. Ins. Co., 78 Cal., 181; Carberry v. Ins. Co., 51 Wis., 605; Von Genechtin v. Ins. Co., 75 Ia., 544; Rev. Stat. Wyo., Sec. 2478.)   It was the duty of the assured not the insurer to initiate arbitration proceedings.   The company was the debtor and could remain silent.   (Chippewa Co. v. Ins. Co., 80 Mich., 116; Morley v. Ins. Co., supra; Kurche v. Ry. Co., supra; Hood v. Hartshorn, 100 Mass., 117.) Neither the agent nor adjuster could waive the condition of the policy relating to additional insurance, and neither of them could revive the policy after it had been avoided by taking the additional insurance.   (Cleaver v. Traders Ins. Co., 65 Mich., 527; Ins. Co. v. Heiduk, 30 Neb., 288; Bush v. Ins. Co., 63 N. Y., 531; Walsh v. Ins. Co., 73; id., 5; Marvin v. Ins. Co., 85 id., 278; Weed v. Ins. Co., 116 id., 106; Baumgartel v. Ins. Co., 32 N. E. Rep., 990; Quinlan v. Ins. Co., 31 N. E., 31;   Messelbach v. Norman, 122 N. Y., 578; Allen v. Ins. Co., 123 id., 6; Hankins v. Ins. Co., 70 Wis., 1; Knudson v. Ins. Co., 75 id., 198; Shugart v. Ins. Co., 55 Cal., 408; Enos v. Ins. Co., 67 id., 621; Lohnes v. Ins. Co., 121 Mass., 439; Kyte v. Ins. Co., 144 id., 43; Putnam v. Ins. Co., 145 id., 265; Ins. Co. v. Fletcher, 117 U. S., 519; Fitzpatrick v. Ins. Co., 53 Ia., 335; Barre v. Ins. Co., 76 id., 609; Ins. Co. v. Lawrence, 4 Met. (Ky.), 9; Zimmerman v. Ins. Co., 77 Ia., 685; Weidert v. Ins. Co., 24 Pac., 242; Ins. Co. v. Huntzinger, 98 Pa. St., 41; Ins. Co. v. Conover, id., 384; Cator v. Ins. Co.,

33 N. J. L., 487; Brown v. Ins. Co., 59 N. H., 298; Davis v. Ins. Co., 13 Blatch., 462.) The proofs of loss were not sufficient and the defects therein were not waived. (Blakely v. Ins. Co., 20 Wis., 205; Battaile v. Ins. Co., 3 Rob. (Ga.), 384; Ins. Co. v. Evans, 9 Md., 1; Ins. Co. v. Doll, 35 id., 89; Hanna v. Ins. Co., 36 Mo. App.; 10 Fed., 347; Ins. Co. v. Updegraff, 40 Pa. St., 311; Blossom v. Ins. Co., 64 N. Y., 162; Engebretson v. Ins. Co., 53 Wis., 301; Beatty v. Ins. Co., 66 Pa. St., 9.) The schedule was not competent evidence of either the amount or value of the property destroyed. (Ins. Co. v. Doll, supra; Ins. Co. v. Sennett, 41 Pa. St., 161; Browne v. Ins. Co., 68 Mo., 133.) The testimony respecting offers of settlement made by the adjuster was inadmissible. (Richards v. Ins. Co., 83 Mich., 508.) Plaintiff was guilty of intentional false swearing under the policy, and the instructions of the court in that respect were wholly disregarded by the jury, thus rendering the verdict contrary to law. (Leach v. Ins. Co., 58 N. H., 245; Mullen v. Ins. Co., 58 Vt., 113; Claflin v. Ins. Co., 110 U. S., 81.)

*W. R. Stoll*, in reply.

An order granting a new trial is subject to review. (Johnson v. Parrotte, 34 Neb., 26; Kruger v. The Adams, etc., Co., 9 Neb., 526; Husted v. Meade, 58 Conn., 55; Spears v. Bond, 79 Mo., 467; Berry v. Zimmermann, 43 Mo., 215; Robinson v. Co. Court, 32 Mo., 428; Kirchner v. Wood, 48 Mich., 199; Harris v. Walsh (Dak.), 3 N. W., 307.) When a party complains of error in the granting of a new trial, he must except to the ruling, and there abandon his case, and permit an order to be entered dismissing the case. Such an order is final and from it an appeal will lie. (Iron M't B'k. v. Armstrong, 92 Mo., 265; Gilstrap v. Felts, 50 Mo., 428; Davis v. Davis, 8 id., 56; Bowie v. Kansas City, 51 id., 454; Martin v. Henley, 13 id., 312; St. Joseph, etc., Co. v. The Hannibal, etc., Co., 94 Mo., 335; McDonough v. Micholson, 46 id., 35; Byers v. Butterfield, 33 id., 376; Emerson v. Harriett, 11 id., 413; O'Connor v. Koch, 56 id., 253; Pratt v. Perry, 59 id., 454; Conover v. Berdine, 58 id., 508; Dale v. Copple, 53 id., 321;

Zoller v. McDonald, 23 Cal., 136; Koons v. Williamson, 90 Ind., 599.) The inducement to the dismissal is immaterial. An appeal will lie from an order dismissing an action. (Dahler v. Stute, 1 Mont., 206; Dowling v. Polack, 18 Cal., 626; Leese v. Sherwood, 21 Cal., 152; Sprick v. Washington Co., 3 Neb., 253; Moore v. Toenisson, 28 Kan., 433; Smith v. Sahler, 1 Neb., 310; Bowles v. Palmer, 2 Gray, 553; Flanagan v. Hutchinson, 47 Mo., 237; Gill v. Jones, 57 id., 367; St. Louis v. Ex. Co., 108 U. S., 24; Fowler v. Haimel, 139 id., 549; Ross v. Evans, 30 Minn., 206; Morrow v. Sullender, 4 Neb., 374; Tripp v. Santa Rosa St. Ry. Co., 69 Cal., 631; Thorp v. Lorenz, 34 Minn., 350; Hunstock v. Hunstock, 43 La. Ann., 375.) No exception is necessary to a final order or judgment. (Cheney v. Wagner, 30 Neb., 262; Black v. Winterstein, 6 id., 224; Parrat v. Neligh, 7 id., 456; Jones v. Null, 9 id., 254; Welton v. Beltzore, 17 id., 399; Bank v. Buckingham, 12 O. St., 402; Burnes v. Scott, 29 Fla., 285; Powell on App. Pro., 215.) The conduct of the adjuster waived proofs of loss. (2 May on Ins., Chap. 25.) A party may plead generally that he has performed all the conditions on his part. (Rev. Stat., Sec. 2478.)

CLARK, JUSTICE.    (Statement of facts.)

This is an action on a policy of insurance issued by the defendant company on the 5th day of May, 1890, insuring plaintiff against loss by fire on a stock of groceries for the sum of $1,200.00, and store fixtures for the sum of $300.00, all while contained in a certain store building situate in the City of Cheyenne in this State. The building containing the property so insured was burned on December 26, 1890. The action was commenced in the court below on the 16th day of April, 1891.

The plaintiff in his petition alleged:

1st. The corporate character of defendant.

2d. The making of the policy and its consideration, and a description of the property insured, annexing the policy and referring to it as a part of the petition.

3d. That plaintiff at date of policy and thenceforth until

the fire had an interest in the said property as owner in an amount exceeding $2,500.00.

4th. That on December 26, 1890, the said property so insured was totally destroyed by fire.

5th. That he "duly fulfilled all the conditions of said "insurance on his part, and gave immediate notice of said "fire to the agents of the said defendant, and within sixty days "from the date of said fire gave due notice and proof of the "fire and loss and duly demanded payment of the said sum of "fifteen hundred dollars."

6th. That no part has been paid and the said sum is due to plaintiff, wherefore he prays judgment.

The policy annexed to the petition contains among others, not necessary here to state, the following provisions and conditions:

1st. That in the event of loss by fire, the loss or damage should be estimated according to the actual cash value at the time of the fire, not exceeding what it would cost assured to replace the same, deducting therefrom a reasonable amount for depreciation from usage or otherwise—such loss or damage to be paid sixty days after the written notice and proofs as thereinafter required shall have been made by assured and delivered to the company in Chicago in accordance with the terms and provisions of the policy.

2d. That if the assured shall have or after the issuance of the policy procure any other insurance valid or invalid on the property insured or any part thereof without the consent of the company written upon this policy then and in such case this policy should become absolutely void.

3d. "Persons sustaining loss or damage by fire shall forth-"with give notice thereof to this company in writing and "within thirty days after the loss shall have occurred render "a particular account of such loss signed and sworn to by "them stating whether any and what other insurance has been "made on the same property, giving copies of the written por-"tions of all policies thereon, also the actual cash value of the "property and their interests therein; for what purpose, and "by whom the building insured or containing the property in-

"sured and the several parts thereof were used at the time of "the loss; when and how the fire originated, and shall also "produce and deliver to this company, within thirty days after "the loss shall have occurred, a certificate under the hand and "seal of a magistrate or notary public (nearest the place of the "fire, not concerned in the loss as a creditor or otherwise, nor "related to the assured), stating that he has examined the cir-"cumstances attending the loss, knows the character and cir-"cumstances of assured, and verily believes that the assured "has, without fraud, sustained loss on the property insured to "the amount which such magistrate or notary public shall "certify.  And unless such particular account and certificate "is rendered in the manner and within the time hereinbefore "stated this policy shall be absolutely void."

4th.  "All fraud or attempt at fraud by false swearing or "otherwise shall forfeit all claim under this policy."

5th.  That when personal property is damaged "the "amount of sound value and of damage shall be determined by "mutual agreement of the company and assured; or failing to "thus agree, the same shall then be determined by appraisal "of each article by two competent and disinterested apprais-"ers, one to be appointed by assured and the other by this "company and the two so chosen shall first select a competent "and disinterested umpire.  The appraisers together shall "then estimate and determine the damages as above provided, "stating separately sound value and damage; and failing to "agree shall submit their differences to the umpire, and the "award of any two of them made in writing and under oath "before any magistrate or other properly qualified person shall "be final and binding on the parties hereto as to the amount "of such damage.  The company reserves the right to take the "whole or any part of the articles at their appraised value."

6th.  That "until sixty days after the proofs, certificates, "plans and specifications and award of appraisers herein re-"quired shall have been rendered and examinations perfected "by assured the loss shall not be payable."

7th.  That "neither the agent who issued the policy nor "any other person, except its secretary in the City of Chicago,

"has authority to waive, modify or strike from the policy any "of its terms and conditions. * * * Nor in the event "that this policy shall become void by reason of non-com-"pliance with any of the terms or conditions thereof, shall "the agent have the power to waive, modify or revise the "same, and any policy so made void shall remain void and of "no effect, any contract by parol or otherwise or understand-"ing with the agent to the contrary notwithstanding."

8th. No suit for the recovery of a claim under the policy shall be maintainable unless commenced within one year from the date of the fire.

On the 4th day of July, 1891, the defendant filed its answer to plaintiff's petition, and in its first defense admitted its corporate character and the making of the policy and denied generally all the other allegations of plaintiff's petition. For a second defense defendant alleged that plaintiff never at any time gave to defendant any written or other notice of his alleged loss as provided in the policy or otherwise, nor did he at any time render to defendant a particular account or any account of his alleged loss, signed and sworn to by him or otherwise; nor did the plaintiff at any time produce or deliver to defendant any certificate under the hand and seal of a magistrate or notary public as required by the conditions of the policy.

For a third defense defendant alleged that plaintiff had been guilty of fraud and attempt at fraud by false swearing and otherwise, in this, that after the loss plaintiff falsely swore that the quantity of property destroyed by fire was four times as great as the quantity actually destroyed; that he falsely swore that the value of the property destroyed was four times as great as it actually was, and that this false swearing was done by plaintiff knowingly, wilfully and for the purpose of misleading and deceiving the defendant as to the amount of his loss, etc.

For a fourth defense defendant alleged that it is provided in the policy that in case of other insurance upon the property the loss should be pro-rated between the several companies insuring; that the loss actually suffered did not

exceed the sum of $400.00, and that there was other insurance in the sum of $1,000.00 upon the property.

For a fifth defense defendant alleged that on the 13th day of October, 1890, plaintiff procured other insurance upon the property in the sum of one thousand dollars in the Hartford Fire Insurance Company of Hartford, Connecticut, without the consent of the defendant written upon its policy or otherwise.

To such answer plaintiff filed his reply in which he set forth facts tending to show a waiver of the conditions of the policy requiring written notice of the fire, a magistrate's certificate, written consent to other insurance, denied false swearing or any attempt at fraud; denied that the loss sustained by him did not exceed the sum of $400.00, and alleged that on February 9, 1891, at the City of Chicago, he rendered and delivered to defendant a particular account of the loss subscribed and sworn to by him, in substance, in accordance with the provisions of the policy.

Upon the issues presented by these pleadings the cause came on for trial before a jury on the 12th day of January, 1892. Upon the conclusion of the evidence the court instructed the jury and submitted the determination of the cause to them, directing them to find a general verdict, and, over plaintiff's objection, to answer four special questions in addition to their general verdict.

Thereafter, on the 18th day of January, 1892, the jury returned the following general verdict. "We, the jury in the "above cause do find for the plaintiff in the sum of sixteen "hundred and thirty-five dollars ($1,635.00)." And at the same time special findings as follows:

"We, the jury in the above cause, do make the following "special findings in said cause:

"1. Was the amount of sound value and of damage, or "either of them, determined by mutual agreement of the "plaintiff and the defendant?

"Answer. No.

"2. Did the plaintiff and the defendant fail to agree upon

"the amount of damage sustained by the plaintiff under the
"policy by reason of the fire?

"Answer. No.

"3. Was the amount of sound value and of damage, or
"either of them, determined by arbitration or appraisal of ap-
"praisers selected by the plaintiff and the defendant, under
"the terms of the policy?

"Answer. No.

"4. Did the plaintiff—Kahn—ever demand or request of
"the defendant an appraisal or arbitration of the amount of
"sound value and of damage as provided for by the policy?

"Answer. No."

Upon the rendition of said verdict and special findings the
plaintiff filed his written motion for judgment in his behalf
upon the verdict, and on the 21st day of January, 1892, the
defendant filed its motion to vacate and set aside the verdict
and findings of the jury and for a new trial, as follows:

"MOTION FOR NEW TRIAL."

"Comes now the said defendant, the Traders Insurance
"Company, and moves the court to set aside and vacate the
"verdict and findings of the jury heretofore rendered herein,
"and to grant a new trial in this case, for the following rea-
"sons."

"1. Because the court erred upon the trial of said cause
"in refusing to give to the jury the following instruction re-
"quested by the defendant:

"You are instructed that the policy in suit provides that
"in case of loss and in case of failure of the plaintiff and the
"defendant to agree on the measure of damage or loss, the
"measure of damages shall be ascertained by arbitrators
"chosen in the manner set forth in the policy. You are
"further instructed that the policy provides that the loss shall
"not be payable until sixty days after such arbitration. You
"are further instructed that under the evidence here it is es-
"tablished without contradiction that the plaintiff and de-
"fendant disagreed as to the amount of the loss or damages,
"and there is no evidence that any arbitration was ever had,

"or that the plaintiff ever made any effort to procure such "arbitration. You are therefore instructed to find· for the "defendant.

"2. Because the court erred upon the trial of said cause in . "refusing to give to the jury the following instruction, re-"quested by the defendants:

"The court instructs the jury that by the terms of the policy "of insurance, under which the plaintiff seeks to recover in "this case, it is provided that 'If assured shall have, or here-"after procure, any other insurance, or any part thereof, * * * * this policy shall, without the written consent of this "company thereto be indorsed hereon, become absolutely "void.' As shown in the evidence in this case, the plaintiff, "after the issuance of the policy of insurance, under which "he seeks to recover, to wit: on the thirteenth day of Octo-"ber, 1890, did procure other insurance upon a portion of "the property covered by the policy in suit, which said other "insurance was so procured without the consent of the defend-"ant written upon its policy, or otherwise, by reason of which "the plaintiff has voluntarily forfeited any rights which he "may have had under the policy in suit; and the jury will "therefore find for the defendant.

"3. Because the court erred upon the trial of said cause "in refusing to give to the jury the following instruction re-"quested by the defendant:

"The court instructs the jury that by the policy of insur-"ance sued on in this case the plaintiff was insured by the "defendant against loss or damage sustained by fire, not ex-"ceeding the sum of twelve hundred dollars on his stock of "groceries and provisions, etc., and not exceeding the sum of "three hundred dollars on his store furniture and fixtures, etc. "The court further instructs the jury that by the terms of "the policy it is provided that: 'If assured shall have or here-"after procure any other insurance, valid or invalid, on the "property hereby insured, or on any part thereof * * * "this policy shall, without the written consent of this com-"pany thereto be indorsed hereon, become absolutely void.' "As shown by the evidence in this case, the plaintiff, after the

"issuance of the policy of insurance in suit, to wit: in October,
"1890, did procure other insurance upon a portion of the
"property covered by the policy in suit, to wit: upon the
"plaintiff's stock of groceries and provisions, etc., which said
"other insurance was so procured without the consent of the
"defendant written upon this policy, or otherwise, by reason
"of which the plaintiff has voluntarily forfeited any rights
"which he may have had under the policy in suit, in so far as
"the same extended to his stock of groceries and provisions,
"etc., and the jury will therefore find for the defendant as to
"the said stock of groceries and provisions, etc., which were
"so insured by the plaintiff against loss or damage by fire, not
"exceeding the said sum of twelve hundred dollars; the said
"policy being rendered void to that extent by the procuring
"of the additional insurance as aforesaid."

"4. Because the court erred upon the trial of said cause in
"refusing to give to the jury the following instruction re-
"quested by the defendant:

"The court instructs the jury that one of the conditions in
"the policy of insurance in this case requires that the plaintiff
"as a condition precedent to a recovery thereon, should fur-
"nish to the defendant a particular account of any loss, signed
"and sworn to by the plaintiff, giving copies of the written
"portion of all policies covering the property, also the actual
"cash value of the property, and also stating for what pur-
"pose and by whom the building containing the property,
"and the several parts thereof, was used at the time of the
"loss. There is no evidence in this case tending to show that
"the plaintiff furnished to the defendant a statement contain-
"ing these matters, as required by the policy, and the jury is
"therefore instructed to find for the defendant.

"5. Because the court erred upon the trial of said cause in
"giving to the jury the following instruction, over the objec-
"tion of the defendant:

"If you find from a preponderance of the evidence that the
"policy of insurance in this case was taken out on the 5th
"day of May, 1890, for the amount of $1,200 on the plaintiff's
"stock of groceries and $300 on his fixtures, as described in

"the policy, and that the same stock of groceries was on the "13th day of October, 1890, insured in the Hartford Fire In-"surance Company for $1,000 more, and that the defendant "had full knowledge of such additional insurance, and if you "further find that said stock of groceries, covered by both "policies of insurance, and the fixtures covered by the policy "of defendant, were destroyed by fire on the 26th day of De-"cember, 1890, and that the cash value of the groceries so "destroyed was $2,200 and the value of the fixtures so de-"stroyed was $300, then you will find for the plaintiff in the "sum of $1,500, to which you will add interest at the rate of "one per cent. per month, beginning sixty days after proofs of "loss were received by defendant, providing you further find "that the proofs of loss were received by defendant, and pro-"viding you further find from a preponderance of the evidence "under these instructions that the plaintiff is entitled to re-"cover at all.

"6.   Because the court erred upon the trial of said cause in "giving to the jury the following instruction, over the objec-"tion of the defendant:

"The defendant sets up as a defense the fact that plaintiff "did not deliver to it the proofs of loss within 30 days after "the fire.   This the plaintiff admits but alleges that by reason "of the conduct, representations and declarations of defend-"ant's duly authorized adjuster, he was delayed in not send-"ing them within the time specified.   He therefore claims "that defendant is estopped from setting up this fact as a de-"fense in this suit.   The question of waiver is a question for "the jury to pass upon.   The limitation as to the time within "which proofs shall be sent is not absolute.   The law requires "a substantial compliance with the conditions of the policy; "and exacts of the plaintiff good faith and honest dealing. "It also requires the same of the defendant.   I therefore "charge you that if you believe from a preponderance of the "evidence that the defendant after notice of the loss sent an "adjuster to adjust the loss, that the delay of the plaintiff in "not sending his proofs of loss within 30 days after the fire "was due to such conduct as would cause a reasonable and

"prudent man to delay and that the plaintiff did in good faith
"delay in sending his proofs of loss owing to the conduct,
"representations and declarations of defendant's adjuster; and
"that he sent them as soon after the fire as an honest and
"prudent man, under all the circumstances of the case, would
"have done, the delay cannot avail the defendant.

"7.    Because the court erred upon the trial of said cause
"in giving to the jury the following instruction, over the ob-
"jection of the defendant:

"The defendant also alleges that the policy sued on in this
"case is void on account of the fact that its consent to addi-
"tional insurance was not indorsed upon the policy in this
"case.    If this defendant had knowledge of the existence of
"such additional insurance, and with such knowledge acknowl-
"edged to the plaintiff its liability upon its own policy not-
"withstanding such additional insurance, and upon receipt of
"notice of the fire sent a duly authorized adjuster to investi-
"gate the circumstances of the fire, and to settle with the
"plaintiff for the same; and that said adjuster examined both
"policies of insurance and after said examinations continued
"to investigate the circumstances of the fire and made propo-
"sitions of settlement and made out proofs of loss for the com-
"pany, and if the secretary of the company at Chicago re-
"ceived notice of the additional insurance and directed the
"general agents at Denver to investigate the same, or did
"any act fairly showing an acknowledgment of defendant's
"liability upon the policy after he knew of the additional in-
"surance, if you find that he did know of such additional in-
"surance, it is for the jury to say whether the defendant has
"or has not waived its right to insist upon the condition of
"the policy in regard to the additional insurance being in-
"dorsed upon its policy; and the defendant must show by a
"preponderance of the evidence that it has not waived its right
"in this respect.

"8.    Because the general verdict of the jury is not sustained
"by sufficient evidence.

"9.    Because the general verdict of the jury is contrary to
"law.

"10. Because the first and second special findings of the "jury are contradictory and inconsistent.

"11. Because the second special finding of the jury is not "sustained by sufficient evidence.

"12. Because the second special finding of the jury is con-"trary to law.

"13. Because the special findings of the jury and the gen-"eral verdict of the jury are inconsistent and contradictory.

"14. Because the court erred upon the trial of said cause "in permitting Samuel Kahn, a witness for the plaintiff, over "the objection of the defendant, to refer to and refresh his "memory from the schedule which was afterwards introduced "in evidence as a part of the proofs of loss under the policy.

"15. Because the court erred upon the trial of said cause "in permitting Samuel Kahn, a witness for the plaintiff, to "read to the jury the schedule which was afterwards intro-"duced in evidence as a part of the proofs of loss under the "policy, the same being so read over the objection of the "defendant and in response to a question on behalf of the "plaintiff, requesting the said witness to state the amount of "goods, etc., in the store at the time of the fire.

"16. Because the court erred upon the trial of said cause "in permitting Samuel Kahn, a witness for the plaintiff, over "the objection of the defendant, to enumerate and state the "value of different articles alleged to have been lost by the "fire, and which were not included in the plaintiff's alleged "proofs of loss.

"17. Because the court erred upon the trial of said cause "in permitting the plaintiff, over the objection of the defend-"ant, to read in evidence the affidavit and schedule offered by "the plaintiff as proofs of loss under the policy.

"18. Because the court erred upon the trial of said cause "in permitting Mr. Baird, a witness for the plaintiff, to testify, "over the objection of the defendant, respecting certain offers "of settlement made by an adjuster of the defendant to the "plaintiff."

The motion of plaintiff for judgment upon the verdict and of defendant for a new trial were heard by the court

January 25, 1892, and plaintiff's motion for judgment was denied, to which ruling plaintiff duly excepted and defendant's motion to vacate the verdict and special findings of the jury and to grant a new trial was sustained, to which ruling plaintiff duly excepted.

Thereafter on the 17th day of March, 1892, the following order was entered in this cause in the court below:

"Come now the parties hereto by their respective attorneys and the plaintiff announced his intention to rely upon his exceptions heretofore taken herein to the granting of the motion for a new trial and to the overruling of his motion for judgment in his favor, and declines to further prosecute this action in this court.

"It is therefore considered, ordered and adjudged, that this action be dismissed at the costs of the plaintiff; that the said defendant go hence without day and recover from the plaintiff its costs herein taxed at $38.75."

The plaintiff in error, the plaintiff below, brings this cause here upon petition in error, assigning as error:

1.  That the court erred in refusing to admit in evidence certain certificates issued to one Stitzer and another by the insurance department of this state authorizing them to act as agents for defendant in error.

2.  That the court erred in withdrawing certain testimony from the consideration of the jury.

3.  That the court erred in modifying certain instructions to the jury requested by plaintiff.

4.  That the court erred in giving certain instructions to the jury at request of the defendant.

5.  That the court erred in directing the jury to make special findings upon the questions submitted to them, as hereinbefore set forth.

6.  That the court erred in overruling plaintiff's motion for judgment upon the verdict.

7.  That the court erred in sustaining defendant's motion to set aside and vacate the verdict and findings of the jury and to grant a new trial.

8. That the court erred in dismissing the case and rendering judgment in favor of defendant.

Opinion.—There are two principal questions presented by the record in this cause, viz.:

First. Is the plaintiff in such position that he can lawfully call upon the court to review the rulings of the trial court in setting aside and vacating the verdict rendered by the jury and in granting a new trial?

Second. If he is in such position, are there apparent upon the record errors of such nature that this court should reverse the action of the court below?

As to the first question:

The appellate jurisdiction of this court is limited by statute to the review of judgments and final orders. The final order which can be reviewed on proceedings in error is defined to be "An order affecting a substantial right in an action, when "such order in effect determines the action and prevents a "judgment." R. S., Sec. 3126.

In this case the court ordered that the case be dismissed at plaintiff's costs, and rendered judgment for defendant that it go hence without day. and recover its costs of plaintiff. It cannot be doubted that the effect of this action by the court was to finally determine the cause, and, while it may not be such a determination of the matters in controversy between the parties as to preclude the plaintiff from bringing another action based upon those matters, it cannot be questioned that so far as this particular action is concerned it was as completely disposed of by the final order entered herein as would have been the case had there been a judgment for defendant upon the merits.

But it is strongly urged upon us on behalf of the defendant, that inasmuch as the plaintiff refused to submit to the order vacating the verdict and refused to proceed further in the court that by such action it became necessary for the court below to make the order it did make, and therefore the plaintiff ought not to be heard to complain of it; that the order was not either necessarily or logically the result of any act or ruling of the court, and hence it is immaterial what proceed-

ings were had in court anterior thereto, and the appellate court should not review such anterior proceedings to determine whether there be error therein for the reason that such error, if any, is not connected with the final determination and cannot have contributed to or influenced the same and is not prejudicial.

If this contention was sound, it would necessarily follow that in no case where a verdict had been rendered for the plaintiff and set aside by the trial court could the action of the court be reviewed by the appellate court. It is, I think, well settled that where a new trial is granted and the party in whose favor the verdict was rendered submits and participates in the new trial, he cannot afterwards be heard to complain of the order granting a new trial, even though there be gross error in such order, otherwise he would be in a position to take his choice of the verdicts upon the first and second trials. And, inasmuch as he cannot be heard in the appellate court until there has been a final determination of the cause in the court below, and the action is no longer pending there, it seems to me that he ought to be permitted to stand upon his exceptions and let the court make such final determination of the cause as it deems proper.

I know that there are cases which hold that an order granting a new trial does not affect any substantial right of a party, and may not be reviewed, and as well there are cases which hold that such an order in effect does determine the action and prevent a judgment and hence may be directly appealed from; but these are extreme views in opposite directions— and I do not feel inclined to be guided by them. I think a fair construction of our statute does authorize the granting of a new trial to be the basis of a specification of error. It can hardly be doubted that an order setting aside the verdict of a jury does affect the substantial rights of the party in whose favor it was rendered, under our system of jurisprudence. From time immemorial it has been one of the most cherished rights of the individual that he should be permitted to have his matters in litigation submitted to a fair and impartial jury of his countrymen, and it would seem to

need no argument to show that when he has brought his cause to court, and at the expense of time and money secured at the hands of such a jury their declaration in his favor, he ought to have and enjoy the fruits of that declaration, unless there be grave and weighty reasons to the contrary. Edwards v. O'Brien, 2 Wyo., 496. I do not mean to intimate that trial courts ought not to exercise a wise and discreet supervision over all the proceedings in their courts, including the action of juries, but only this that when a verdict has been rendered there ought to be sound, weighty, substantial reasons for interfering with it; and this being so, it would seem that an order granting a new trial might be, in the language of our statute, "material and prejudicial to the substantial rights of the party excepting," and hence the subject of review. R. S., Sec. 2650. Sec. 2649, R. S., provides the method in which an exception to the opinion of the trial court on a motion for a new trial may be preserved, and I can see nothing in that section or in the entire chapter of our code on exceptions which would indicate that it was the intention of the legislature to limit the right to an exception to cases where a new trial had been refused, but rather, on the contrary, the intention was to permit the exception in either case. This being so, and the exception being allowed in such cases solely for the purpose of reserving the question for review in the appellate court, it follows that the action of the court in granting a new trial may be reviewed. Owing to the fact that in this state the Code of Civil Procedure was taken almost without change from the state of Ohio we have carefully examined the decisions of that state upon this question, but have been unable to find any case exactly in point, but so far as the cases there do go they seem to support the contention of the plaintiff here.

In Beatty v. Hatcher, 13 Ohio St., 120, the court in commenting upon a statute of that state which provided that "either party shall have the right to except to the opinion "of the court in all cases of motion for new trial  *  *  *  * "so that said case may be removed by petition in error," use the following language:  "And while it is not necessary to

hold that "we will in no case employ this power apparently "conferred by the letter of the statute, we are free to say "that it will require a strong case to justify its exercise."

In Stafford v. Bradley, 20 Ohio, 74, the court in referring to the above mentioned statute say that a party would, it seems, be entitled to his writ of error as well in a case where a motion for a new trial is sustained as where it is refused. I feel convinced that our Statute on Exceptions as certainly confers the right of exception upon either party in cases of motions for new trials as does the Ohio statute above mentioned.

In Dean v. King, 22 Ohio St., 134, the court in discussing the matter of new trials, etc., say: "Motions for new trials "upon the ground that the verdict is against the weight of "evidence are addressed to the sound discretion of the court, "and if granted the judgment will not be reversed on error "unless the case is so strong as to show an abuse of discretion."

Our attention was called by counsel for defendant to the cases of Conord v. Runnels, 23 Ohio St., 601, and Smith v. Board of Education, 27 Ohio St., 44, in support of the proposition that it had "long been held in Ohio that error will not "lie from the granting of a new trial even after final judg-"ment." But in each of these cases there had been a new trial in which the complaining party participated, and the holding was that under such circumstances the court would not review the proceedings upon the first trial, the reason therefore being stated in Andrews v. Youngstown, 35 Ohio St., 221, as follows: "Where a new trial has been awarded and a party has voluntarily submitted to such trial, it seems to us but reasonable that he should be held to have waived the right to prosecute error to reverse the judgment of reversal." It would seem, then, that in Ohio an order granting a new trial would be subject to review. In Missouri, under a system of practice which prohibits the appellate court from entertaining proceedings in error until there has been a final determination of the case in the trial court, there is a long line of decisions commencing in the early days of the court and continuing down to the present time, which establish and uphold the

method of practice observed in this case. In Iron Mountain Bank v. Armstrong, 92 Mo., at page 277, in discussing the precise question we have here, the court say: "As to the first "question presented by this record as hereinbefore stated we "are of opinion that under numerous decisions of this court it "must be answered in the affirmative. While those authori- "ties hold that a judgment setting aside a verdict and grant- "ing a new trial is not a final judgment and will not there- "fore support an appeal or writ of error, still they all in effect "hold that when the trial court improperly grants a new "trial the party complaining may avail himself of the error "by tendering his bill of exceptions and abandoning the case "at that point, and that when a final judgment is then after- "wards rendered in said cause he may then, by excepting "thereto take and support an appeal, and in this way secure "a review of errors committed, if any, in setting aside said "verdict and granting said new trial. These authorities also "hold that if such party participates in the new trial awarded "he will not afterwards be heard to complain of the errors "committed in the first trial." Citing Hill v. Wilkins, 4 Mo., 87-88; Davis v. Davis, 8 Mo., 56-58; Martin v. Henley, 13 Mo., 312-313; Bowie v. Kansas City, 51 Mo., 459; Gilstrap v. Felts, 50 Mo., 431.

Coupling with the foregoing considerations the fact that in many of our sister states statutes have been enacted ex- pressly authorizing by direct appeal a review of orders grant- ing as well as refusing new trials, a fact which indicates a widespread belief that such is the just and proper rule, I am of opinion that the question must be answered in the affirmative.

The foregoing conclusion leads to the consideration of the second question as above stated, and the consideration of that question renders necessary a review of the evidence and in- structions given at the trial as far as may be deemed material to a proper understanding and disposition of the cause.

The evidence shows substantially the following facts: On May 5, 1890, and continuously until the date of the fire on December 26, 1890, Frank A. Stitzer was the agent of the

defendant at Cheyenne, Wyoming. As such agent he was intrusted with blank policies of insurance bearing the signatures of the president and secretary of the company and was authorized by the company to make contracts of insurance and to countersign and issue policies and to receive the premiums therefor. On that day, May 5th, the plaintiff, who was then and until the fire occurred a grocery merchant, engaged in business in Cheyenne, applied to said agent for insurance upon his stock of goods and store fixtures in the sum of $1,200.00 and $300.00, respectively; paid to said agent the premiums, $30.00, and received the policy sued on in this action, which was countersigned by said Stitzer. Thereafter on the 13th day of October, 1890, the plaintiff applied to said Stitzer for additional insurance upon his stock of goods in the sum of $1,000.00 and obtained it in the Hartford Fire Insurance Co., of which company said Stitzer was also the agent, with like authority as in the case of the defendant company. The policy issued by the Hartford Company bears the indorsement "$1,200 other concurrent insurance," and is countersigned by said Stitzer. This additional insurance was not indorsed upon the policy sued upon, and through oversight the agent, Stitzer, failed to notify the defendant of it.

Thereafter, on December 26, 1890, while both policies were in force, fire occurred and the stock of goods and fixtures insured were burned and damaged by smoke and water, together with plaintiff's books of account.

On the morning after the fire the agent, Stitzer (who testified that after loss he was merely authorized to report the loss and if there were any goods not destroyed to instruct the assured to take proper care of them until an adjuster arrived), was notified by plaintiff of the fire and at once proceeded to the store and remained there three-quarters of an hour examining into the condition of matters there. He saw nothing of any consequence that could be saved. After visiting the scene of the fire and upon the same day he reported by letter the fact of the loss to the defendant company at Denver and Chicago.

Thereafter and a short time prior to January 12, 1891, the

defendant through Cobb, Wilson & Benedict, of Denver, Colorado, its general agents for the states of Colorado and Wyoming, sent an adjuster, one Norton, to Cheyenne, with authority to adjust and settle plaintiff's loss. In the performance of this duty the adjuster was engaged for two and perhaps three days, and while so engaged he subjected plaintiff to a rigid examination as to the quantity of goods he had, from whom he purchased them, what he paid for them, the quantity thereof, their value before and after the fire, etc., making extensive memoranda of the facts elicited. He several times offered plaintiff $300.00 in settlement of the loss and urged him to take it, saying to him: "You cannot "afford to fight this case; we represent more capital than you "do and you are a poor man and had better compromise." The only difficulty in the way of a settlement of the loss seems from the testimony to be owing to the fact that the plaintiff and the adjuster did not arrive at an agreement as to the amount of the loss; no other reason of any kind for delay was assigned by the adjuster than doubt as to the amount of plaintiff's loss. After a few days spent in the endeavor to make a settlement the adjuster told plaintiff that he had to go away and would be back again in a few days, and he hoped the matter would be settled up, to which plaintiff replied, to quote his own language: "Mr. Norton, I don't "know anything about a fire; never had any experience about "it; I want you to tell me what I have to do. Mr. Baird "said I have to have some papers and I don't know what to "do." He said: "You don't need anything at all; don't need "any papers. I have got all the company needs in this book; "that's all they want; you don't need to make out any "papers at all." At the commencement of these attempts at adjustment the plaintiff handed both the policies to the adjuster, he representing both the defendant and the Hartford Fire Ins. Co. The adjuster left, and, not returning, the plaintiff in person and through his attorney during the next two or three weeks had frequent and repeated interviews with the agent, Stitzer, in the endeavor to get the matter settled, and to ascertain what the defendant intended doing about it; but

all that Stitzer could say was that he was constantly expect-
ing another adjuster, and that the matter would be speedily
settled.   Nothing further seems to have been done until
on February 7, 1891, the plaintiff, through his attorney, sent
by mail to the defendant at Chicago, Illinois, a schedule of
the property destroyed, setting opposite the description of
each item the cost price thereof; this was attached to an
affidavit of plaintiff in which he stated that he was the person
named in the policy sued on, that the insured property was
burned up and destroyed by fire on December 26, 1890; that
he believed the fire to have been of incendiary origin; that
he was the owner of the goods; that attached thereto was a
statement of each article of property burned up and the cost
price thereof; that on October 13, 1890, he obtained through
the agency of Stitzer $1,000.00 additional insurance in the
Hartford Fire Ins. Co. upon said stock of goods; that Stitzer
received immediate notice of the fire and at once made an ex-
amination thereof; that Stitzer a few days thereafter brought
with him an adjuster of the defendant and they together made
several examinations of all things connected with the fire;
that Stitzer had several times represented that the adjuster
would settle the matter, but he had failed to appear; that the
statement attached had been prepared for a long time for the
examination of the defendant's agents, but that inasmuch as
they had not appeared he, plaintiff, sent it direct to the com-
pany.

Accompanying this affidavit was a letter under date Febru-
ary 7, 1891, from plaintiff's attorney to defendant, in which
after reiterating some of the statements in the affidavit, it is
stated:

"For the information of the adjuster the list hereto attached
"has been made out and held in readiness.   Mr. Kahn has
"held himself in readiness to give such information as might
"be desired at all times, and owing to the failure of the ad-
"juster to be here in accordance with the information con-
"veyed to us by Mr. Stitzer we have at last decided to send
"the list direct to the company.   Owing to the unsatisfactory
"status of the case I hope you will kindly respond and inform

"us whether the insured is going to be paid or not. If you "wish any information in addition to what is contained in "the inclosed it will be gladly furnished you."

This letter, with accompanying statement and affidavit, was duly received by defendant and forwarded by it to its general agents, Cobb, Wilson & Benedict, at Denver, Colorado, who, on February 28, 1891, wrote to plaintiff acknowledging receipt, and further saying:

"These notices, we presume, are sent in compliance with "the terms of your contract, in which it is covenanted that 'If " 'a fire occur the assured shall give immediate notice of any " 'loss thereby in writing to this company,' and they are ac-"cepted as such notice. We respectfully refer you to the con-"ditions of your policies, wherein it states that you must first "give immediate notice in writing to this company, and then "give minute instructions as to your course in presenting the "claim. We must insist upon a full and complete compli-"ance in every particular with all the terms and conditions of "your policy, which is the contract. Until a full and com-"plete compliance on your part with all the conditions and "requirements therein contained we cannot give consideration "to the questions which you present."

With respect to the foregoing facts there seems to be no sort of conflict in the evidence. All the evidence introduced upon the trial was on behalf of the plaintiff; the defendant offering none and contenting itself with the cross-examination of the plaintiff's witnesses.

1. It appears from the record that at the close of the examination of witnesses the defendant extracted from the testimony a defense additional to the five distinct defenses set forth in its answer, viz.: one based upon the arbitration clause in the policy; and requested the court to give to the jury five separate and distinct instructions and to submit four specific questions, based upon this clause; four of these instructions were given by the court to the jury, to each of which plaintiff objected and excepted to the ruling of the court. One of said instructions was refused by the court, and defendant preserved its exception thereto; the questions were

submitted to the jury, and to this plaintiff preserved his exception. The 1st, 10th, 11th, 12th and 13th and one branch of the 8th and 9th grounds of defendant's motion for a new trial were based upon this clause in the policy and the testimony which was deemed to apply to it.

At the argument and in briefs of counsel this question was discussed from every conceivable point of view, and every phase of the law relating thereto exhaustively presented to the court; but from the view we take of the matter it is not necessary to enter upon any very extended consideration of this particular matter. It is sufficient to say that this defense was not pleaded by the defendant, and hence no question based upon this arbitration clause should have been submitted to the jury. Matter in defense cannot be availed of unless pleaded. 2 May on Insurance, Sec. 591; Dyer v. Piscataqua F. & M. Ins. Co., 53 Me., 119; N. Y. Cent. Ins. Co. v. Nat. Prot. Ins. Co., 20 Barb., 468; Cassicia v. Phœnix Ins. Co., 28 Cal., 629; Coburn v. Travelers Ins. Co., 145 Mass., 226; Home Ins. Co. v. Curtis, 32 Mich., 403; Minnoch v. Ins. Co., 90 Mich., 240; Sussex Co. Mut. Ins. Co. v. Woodruff, 2 Dutch, 541; Northrup et al. v. The Mississippi V. I. Co., 47 Mo., 435; 2 Wood on Insurance, Sec. 522, page 1141, and cases cited.

But it is contended with very considerable force that the clause providing for arbitration, coupled with the additional clause that "until sixty days after the proofs, certificates, plans "and specifications and award of appraisers herein required "shall have been rendered and examinations perfected by as- "sured the loss shall not be payable," makes an award by appraisers or arbitrators absolutely essential to plaintiff's cause of action, and that plaintiff should have either pleaded a submission of the amount of loss to appraisers and an award by them or else such facts as showed that the defendant committed a breach of the agreement to arbitrate.

I am unable to acquiesce in this view. Assuming for the purposes of this question that the agreement was not a mere collateral agreement to refer, but valid, and such an one as the courts will enforce, it is beyond question that it did not be-

come effective and in force at all events; by its terms it only became so upon the happening of a contingency, to wit: the failure of the insurer and the assured to mutually agree upon the amount of the loss, and hence until the happening of this contingency it was wholly without force or effect. And in the absence of some allegation in plaintiff's petition or defendant's answer to the effect that there had been within the meaning of the language of the policy a failure between plaintiff and defendant to agree upon the amount of the loss how could the court say from the pleadings that a submission to and award of appraiser's or else some breach of the agreement on part of defendant was an essential element of plaintiff's right to recover of defendant? In this case the conditions of the policy were not set forth as they should have been in plaintiff's petition. But many of them were set forth in defendant's answer, and plaintiff's failure to comply therewith alleged as defenses. In plaintiff's reply facts tending to show a waiver of such conditions were alleged. Looking at all the pleadings, a complete cause of action and defense thereto were stated, whatever may have been the case looking only at plaintiff's petition. Yet in all the pleadings there was no approach to an allegation with respect to the arbitration clause of the policy. And for the purpose of this case it must be treated as though there was no such clause. But even though this defense had been set up by defendant with its other defenses, I am of opinion that it would not have availed the defendant.

In this case the defendant denies its liability to pay any loss whatever under this policy in suit; it asserts that the policy has become absolutely void, and there is no provision in the policy in suit that the arbitration shall be had regardless of the question of defendant's liability on other grounds; and I am of opinion that in such cases the condition for arbitration does not have effect.

In Mentz v. Armenia Fire Ins. Co., 79 Pa. St., 478, the condition in the policy was very much more direct and certain than in the policy sued on here. It provided as follows:
"In case any difference or dispute shall arise between the

"assured and this company touching the amount of any loss
"or damage sustained by him, such difference shall be submit-
"ted to the judgment of arbitrators, one to be appointed by
"each party with power to select a third in case of disagree-
"ment, whose decision thereupon shall be final and conclu-
,"sive; and no action, suit or proceedings at law or in equity
"shall be maintained on this policy unless the amount of loss
"or damage in case of difference or dispute shall be first thus
"ascertained."

On the trial the defendants moved for a non-suit because
the section above requires the parties to the policy to submit
to a referee, etc. The motion for a non-suit was allowed.
Upon error in the Supreme Court it was held that in order
that defendants might avail themselves of this defense they
must show that they "admitted the validity of the policy and
"their liability under it and that the only question was as
"to the extent of the loss." Other authorities holding that a
condition for arbitration is not effective in cases where the
insurer denies the general right of the assured to recover
anything are: Goldstone et al. v. Osborne et al., 2 Car & P.,
550; Robinson v. Georges Ins. Co., 17 Me., 131; Phœnix Fire
Ins. Co. v. Badger, 53 Wis., 283; Randall v. Am. Fire Ins.
Co., 10 Mon., 360; Farnum v. Phœnix Ins. Co., 83 Cal., 247;
Bailey v. Ætna Ins. Co., 77 Wis., 336; 2nd Wood on Insur-
ance, Sec. 456.

In this case it does not appear that the defendant ever at
any time requested or suggested a submission of the amount
of the loss to arbitration; in its pleadings it made no sugges-
tion thereof, and so far as the record discloses, no idea of
arbitration was ever at any time suggested by any one in any
manner connected with this cause until after the plaintiff
had closed his testimony, and I can conceive of no sort of
reason why it (the defendant) should not be held to have
conclusively waived the condition. Under such a provision
as the one in question the defendant was the only party who
could effectually demand and bring about arbitration or gain
a defense by reason of the other party's failing to comply
with such demand. If the assured fails to demand arbitration

this deprives the insurer of no rights whatever. If the insurer is deprived of the right of arbitration it can only be by his own laches, because he has only to demand it and if the assured should refuse to accede to the demand without good, substantial reason for such refusal, the courts will probably afford him no relief until he submits to arbitration. But on the other hand, if the insurer is unwilling to arbitrate he may without penalty ignore the request made by assured therefor. And inasmuch as under the terms of the contract it depends upon the will of the insurer alone as to whether he will have arbitration or not, why should he be permitted to complain in cases like this, when it not only appears that he never requested or suggested arbitration, but, on the contrary, everything leads to the belief that had the assured requested it the insurer would not have assented to such request. Cox v. Delmas, 33 Pac., at page 838.

But again, the condition is that when personal property is damaged "the amount of sound value and of damage shall "be determined by mutual agreement of the company and "assured; or failing to thus agree the same shall be determined "by appraisal of each article by two competent and disinterest- "ed appraisers," etc. The evidence discloses practically a total loss, and it would hardly seem that this provision was at all applicable to such a case. It is, however, clear from the evidence that the differences existing between plaintiff and defendant as to the amount of the loss were due in no sense whatever to any failure to agree as to the "amount of sound value and of damage," but to a different thing altogether, viz.: as to the quantity of goods the plaintiff had on hand at the time of the fire. The defendant insisting that the quantity of goods at that time did not exceed one-fourth the quantity claimed by plaintiff. This was the real point of difference between the parties; and I am wholly unable to perceive or understand how it is possible to bring this particular question within the terms or fair meaning of the arbitration clause of the policy.

As to the question which was exhaustively argued at the hearing and in briefs of counsel as to whether the agreement

in this policy constituted a condition precedent or was simply a collateral agreement to refer, we have but little to say; we have assumed for the purpose of this case that in the event of failure to agree between the parties that it became a condition precedent to defendant's liability; but in view of the rule, well established, that the language of an insurance policy is to be most strongly construed against the insurer— Insurance Co. v. Wright, 1 Wall, 456; May on Insurance, Sec. 175, and cases cited; 1 Wood on Insurance, Sec. 58—it may well be doubted if it is anything more than an agreement to refer, collateral to the main contract set forth in the earlier portion of the policy, which provides that the loss or damage shall be "paid sixty days after the written "notice and proofs as hereinafter required shall have been "made by assured and delivered to the company in Chicago "in accordance with the terms and conditions of the policy." Continental Ins. Co. v. Gibbs, 13 Hun., 611; Phœnix Ins. Co. v. Badger, 53 Wis., 284; Canfield v. Watertown Fire Ins. Co., 55 Wis., 422; Hamilton v. Home Ins. Co., 137 U. S., 370; Liverpool Ins. Co. v. Creighton, 51 Ga., 95; May on Insurance, Sec. 494, and note 2; Richards on Insurance, Sec. 168; 2 Wood on Insurance, Secs. 456 and 457.

In Hamilton v. Home Ins. Co., supra, Justice Gray, in delivering the opinion of the Supreme Court of the United States, uses this language in deciding this question:

"The rule of law upon the subject was well stated in Daw-"son v. Fitzgerald by Sir George Jessel, master of the rolls. " 'There are two places where such a plea as the present is " 'successful; first, where the action can only be brought for " 'the sum named by the arbitration; secondly, when it is " 'agreed that no action shall be brought till there has been " 'an arbitration, or that arbitration shall be a condition prece- " 'dent to the right of action. In all other cases where there " 'is, first, a covenant to pay, and, secondly, a covenant to " 'refer, the covenants are distinct and collateral and the " 'plaintiff may sue on the first, leaving the defendant to " 'bring an action for not referring or (under a modern

" 'English statute) to stay the action till there has been an " 'arbitration.' "   L. R., 1 Excl. Div., 260.

Testing the arbitration clause in the policy by this rule, it would seem that the agreement to arbitrate is collateral to the agreement to pay.

On this branch of the case I am of opinion that the court below erred in giving the four instructions referred to, which were based upon the arbitration clause in the policy, and in submitting the general questions to the jury; that it did not err in refusing the instruction assigned by defendant as its first cause for a new trial and set forth in its motion therefor; and that the 1st, 10th, 11th, 12th and 13th, and so much of the 8th and 9th grounds of defendant's motion for a new trial as relates to this question of arbitration did not justify the court in vacating the verdict and granting a new trial.

2.   The 2nd, 3rd, 5th and 7th grounds of defendant's motion for a new trial are all based upon the provision in the policy providing that it should be void in the event that assured should procure additional assurance without defendant's written consent being endorsed upon its policy.

There is no controversy between the parties as to the facts relating to this particular matter, and it may be well to briefly restate them.   The only controversy between the parties is as to the conclusion of law to be drawn from the facts.

Frank A. Stitzer, on the 5th day of May, 1890, and continuously until after the loss herein mentioned occurred, was the agent of the defendant, and also of the The Hartford Fire Ins. Co.   As agent of the defendant he was authorized to receive applications for insurance, moneys for premiums, and to countersign, issue and renew policies of insurance signed by the president and attested by the secretary of the defendant company for the territory of Cheyenne and vicinity, etc., and for the purpose of carrying out such authority he was intrusted with blank policies of insurance signed by the president and attested by the secretary.   In the conduct of the business he received applications for insurance, acted upon them without consultation with any other officer or agent

of the company, received the premium and made the contract of insurance—that is, filled up, countersigned and issued the policy. On the 5th day of May, 1890, he issued the policy sued on. Thereafter, on October 13, 1890, at request of plaintiff he issued a policy in The Hartford Fire Insurance Co. for additional insurance upon the stock of groceries, provisions, etc., covered by defendant's policy of May 5th, 1890. The Hartford policy was endorsed by him thus: "$1,200 other concurrent insurance." He did not endorse upon defendant's policy consent to the additional insurance, nor did he notify the defendant thereof. He says that his failure to so notify defendant was through an oversight. Loss occurred December 26th following. Early in January, 1891, an adjuster representing defendant was sent to Cheyenne, with authority to adjust and settle this loss. He had interviews with plaintiff extending over two or three days in the attempt to make a mutual agreement as to the loss. At the first interview plaintiff handed him both policies, which he carefully examined. On February 7, 1891, plaintiff forwarded to defendant at Chicago an affidavit setting forth the loss and mentioning the additional insurance, to which was attached a schedule of the property burned. This affidavit and schedule was sent by the company to its general agents in Denver, and they under date of February 28, 1891, acknowledged receipt to plaintiff, stating that they acepted it as notice of loss and calling upon plaintiff to fully and completely comply with all the conditions and requirements of the policy here sued on. At no time was any objection made to settlement or any complaint on account of the additional insurance until after suit was brought and it was interposed as a defense to this action.

The sole question, then, is, does the fact of this additional insurance under the circumstances constitute a defense to this action? The determination of this question is purely a question of law, and the jury should have been peremptorily instructed either one way or the other, which way depending upon the answer given by the court to the question of law. The facts were plain, simple and undisputed, and there was

no question of fact to be determined by the jury. When the evidence to a fact is positive and not disputed or questioned it ought to be taken as an established fact, and the charge of the court should proceed upon this basis. Wintz v. Morrison, 17 Tex., 372.

The fact that the agent Stitzer endorsed upon the Hartford policy the words "$1,200 other concurrent insurance" convinces me that at the time of issuing that policy there was then actually present in his mind the knowledge of the existence of the policy here sued on; the policy in suit being the only other policy upon the property covered by the Hartford policy and being for the sum of $1,200.00. There is no room to doubt that the endorsement referred to and was intended to refer to the policy in suit. This being so, it must be assumed that the agent Stitzer actually consented to the additional insurance, otherwise we would have to assume that he intended to perpetrate a fraud upon the plaintiff, and that assumption, of course, ought not to be made if it can be avoided. But these facts of actual knowledge and consent seem to be conceded. The question to be determined is by no means free from difficulty, and has been determined in both ways by the courts of the different states of the Union. By the great weight of authority it seems to me to be reasonably clear that the agent Stitzer must be deemed to be the general agent of the defendant, and not simply a local, special agent with limited power. He was clothed with authority to make contracts of insurance, to issue policies and to receive the premiums therefor, and, possessing such powers, he stood towards the plaintiff in the stead of the company. In short, he was the insurance company to the assured. The defendant was bound not only by notice to him, but his knowledge of matters relating to the contract must be held to be the knowledge of his principal. May on Insurance, Sec. 125; Rivara v. Insurance Co., 62 Miss., 728; Phœnix Ins. Co. v. Munger, 30 Pac., 123; Ins. Co. v. Gray, 43 Kan., 497; Walsh v. Hartford Fire Ins. Co., 73 N. Y., 5; Farnam v. Phœnix Ins. Co., 83 Cal., 246, at p. 261; Walsh v. Hartford Fire Ins. Co., 9 Hun., 421

And there can be no question but that he had authority to endorse the defendant's consent to additional insurance upon the policy here sued on. Warner v. Peoria M. & F. Ins. Co., 14 Wis., 318; Walsh v. Hartford Fire Ins. Co., 73 N. Y., 5; 2nd Wood on Insurance, Sec. 382. This being so, it seems to me that under the facts of this case the defendant ought not now to be heard to complain because the consent to additional insurance was not endorsed upon its policy by its agent. In 2 May on Insurance, Sec. 370, in discussing this question the author says:

"But the courts have become more liberal in favor of the "assured in their construction of this sort of provision, "whether it be contained in the charter or in the policy. While, "as we have seen, the old rule required the consent to be "in writing and indorsed on the policy, it is the decided ten- "dency of the modern cases to hold that if the notice of the "additional insurance be duly given to the company or its "agent, and no objection is made, the company will be "estopped from insisting on a forfeiture of the policy be- "cause their consent thereto was not endorsed, as literally "required by the stipulation. * * * * An office which "issues a subsequent policy will be presumed to have notice "of the prior one, and where both policies are negotiated "through the same person who is agent for both companies, "his knowledge is the knowledge of both companies."

In New Orleans Assn. v. Griffin & Shook, 66 Tex., 235, in discussing this question, the court use this language:

"The fact is that the majority of men contracting fire in- "surance know little of the contents of the policy, until a "clause in fine print is presented as a defense in adjusting the "loss. The agent however is generally familiar with all the "conditions of the contract. For this reason the agent upon "the commonest principles of honesty, encouraged and en- "forced by the courts as universally as practicable is required "to do what the policy prescribes shall be done to preserve the "contract when notified of the facts. * * * It would be unfair "if the agent has not done his duty. It was the duty of the

"agent to consent and make the endorsement or to refuse to do "so if he was informed of the plaintiff's purpose."

In Von Bories v. The United Life F. & M. Ins. Co., 8 Bush, 136, the facts were as here. The subsequent insurance was issued by the person who issued the prior policy—consent was not endorsed upon defendant's prior policy—nor did the agent give notice to his principal. The court held that the defendant had notice from the very moment its general agent issued the second policy, and that "good conscience and fair dealing "required the company in case it was intended to enforce the "forfeiture, to take the necessary steps within a reasonable "time after notice of the second insurance. * * * Much "stress is laid upon the fact that Moore did not notify the "officers of the company of the second insurance. His failure "to do so was a violation of his duty to his principal, which "cannot and ought not to prejudice the rights of the insured."

In American Central Ins. Co. v. McCrea, Maury & Co., 8 Lea., 513, the policy provided that if the assured should procure additional insurance without the written consent of the insurer endorsed upon it it should become void, and also contained this condition:

"The use of general terms, or anything less than a distinct "specific agreement, clearly expressed and endorsed upon this "policy, shall not be construed as a waiver of any printed or "written condition or restriction."

In the case at bar, the provision is that:

"Neither the agent who issued the policy nor any other per- "son except its secretary in the City of Chicago has authority "to waive, modify or strike from the policy any of its terms "and conditions."

I am of opinion that the language used in the case cited is, so far as it affects the question under consideration, viz.: the necessity of written consent to additional insurance, stronger than in the policy here sued on, because that condition literally taken provided that no one could waive it, while here it provides that no one except the secretary could waive it. Gladding v. C. F. M. F. I. Co., 66 Cal., 6. The rule of law with reference to this matter is so clearly stated in the case

just cited, from the 8th Lea, that I quote from the opinion at pages 522, 523 and 524:

"What acts or declarations 'say the learned editors of the "American Leading Cases' will operate as waiver of the war-"ranties or conditions, which play a large and important part "in most modern policies of insurance on life or against fire, "is a question about which the authorities differ too much to "be easily reduced to order and method. For while the courts "have been desirous on the one hand to carry out the general "purpose of the contract as one of indemnity they have been "fettered on the other by stipulations introduced as safe-"guards against fraud or malpractice, and the conflict has "arisen between the general design and the incongruity or "unfitness of the means employed which has at all periods "formed one of the difficulties of the law. 2 Amer. L. C., 911 "(5th Ed.). The struggle on the part of the courts has been "to protect the innocent policy-holder from the literal opera-"tion of conditions designed for one purpose and used for "another. Each new decision has been met by a new condition "and the struggle is recommenced. Perhaps it would have "been better to have left the parties to make their own con-"tracts in this as in other cases, subject to the ordinary rules "of interpretation. * * * * Our duty is however to ad-"minister the law as we find it. * * * * It was at first "held by the courts, when these requirements were inserted "in policies to be essential that these requirements should be "literally complied with, and that anything short of the pre-"scribed formalities would work a forfeiture. But the weight "of authority is now that if notice be duly given to the com-"pany or its agent of the additional insurance or increased "risk and no objection is made the company will be estopped "to insist upon a forfeiture of the policy because their con-"sent was not endorsed as literally required by the stipula-"tion. The authorities pro and con are collated in May on "Ins., Sec. 369-370; 2 Am. Lead. Cases, p. 911, Wood on Ins., "Sec. 496-497."

In Caryugie v. The Atlantic Fire Insurance Company, 40

Ga., 140, McCay, J., in delivering the opinion of the court, uses this language:

"So too after the policy has issued the assured desires ad-"ditional insurance; he informs the agent of it; he approves "and consents, and the assured thinking all right takes new "risks, pays out his money, and at the very time he feels that "he has made himself doubly safe, he has only done that "which makes his policy void. This is an every day occur-"rence, and arises from the introduction of this new clause "only lately thought of in insurance policies. We have given "this matter great consideration, and have come to the con-"clusion, that if the agent be, in fact, and do, in fact, con-"sent and the insured, relying on that consent do in good "faith pay out his money, it does not make the policy void. "* * * * Consent to a prior or subsequent insurance is "within the scope of 'the agent's authority,' as the every day "practice of the country proves, and if an agent does in fact "so consent and the insured in good faith acts upon it, we "think it is a fraud for the company to set up that they had "stipulated this consent to be in writing. * * *· * The "only object of this clause, at least the only legitimate object "is to guard against the over-insurance of the property and "the consequent temptation to crimes. But when it affirma-"tively appears that the consent was given, and that the as-"sured has acted upon it we think it would be but the perpe-"tration of a fraud to permit the company to take advantage "of its own wrong and escape liability because its agent has "failed to do his duty to the assured."

In the case of Weed v. L. & L. Fire Ins. Co., 116 N. Y., 106, a case cited by the defendant in error, it is stated in the opinion of the court at page 117:

"Notwithstanding the provisions of the policy 'that any-"thing less than a distinct, specific agreement clearly ex-"pressed and endorsed on the policy should not be considered "as a waiver of any printed or written condition or restriction "therein,' the court recognize and affirm the law as settled in "this State that such condition can be dispensed with by the

"company or its general agents by oral consent as well as by
"writing."

In National Fire Ins. Co. v. Crane, 16 Md., 260, which was
a case in equity brought for the purpose of reforming the
instrument and recovery thereon, it is said at page 295 in the
opinion of the court:

"Whatever effect the want of such an endorsement may
"have at law, in an action on the policy, we think it cannot
"be urged in a court of equity in a case otherwise free from
"objection. The judge below has correctly stated the law on
"the subject. The endorsement could have been made only by
"the company. If it be omitted, who is to blame? Certainly
"not the assured. These policies contain many stipulations—
"some of them operating as conditions precedent—for the
"benefit of the company, and few for that of the assured. It
"is too common for application to be met and adjustment re-
"fused on frivolous and unjust pretenses in order to defeat
"fair claims, on contracts of which good faith is the very
"essence, and we think it would promote the interest of in-
"surance companies, and tend to a higher state of morals in
"business transactions if they would exhibit more readiness to
"settle demands upon them, than, as we discover from the
"numerous reported cases on the subject, appears to be usual
"with them," and then calling attention to the fact that it was
the president of the company who negotiated the policy, the
opinion proceeds: "In such a case we are called upon to
"say that the party is without remedy; on the contrary we
"think it would be a reproach to the jurisprudence of the
"State if this company were discharged from their contract
"on any such ground."

In the case just cited the defect complained of was that
insurance existing at the time the policy sued on was issued
was not noted upon that policy, although assured had given
the agent who negotiated the subsequent insurance notice of
it. I am aware that many courts have drawn a distinction in
this respect between prior and subsequent insurance; but I
am unable to perceive any substantial reason for the distinc-
tion. If the doctrine is entirely true, that the assured is bound

to know the conditions of his policy, and to that I shall here-
inafter refer, it would seem that after receiving the policy it
would be his duty to examine it within a reasonable time, and
in such case he would observe that the clause related to prior
as well as to subsequent insurance, and if the prior insurance
was not noted upon it he should take it back to the company
and have the correction made.

In Peck v. The New London Mut. Ins. Co., 22 Conn., 575,
the assured obtained additional insurance; the charter of the
defendant company provided that in such case the policy
should be void, unless consent to such additional insurance
should be given by the board of directors of the defendant
company and signified by an endorsement on the back of the
policy by the secretary of the company, and by him sub-
scribed in pursuance of an order to that effect given and
passed by said board of directors. Consent was given and en-
dorsed by a local agent of the company. Evidence was intro-
duced tending to show that by the usage and practice of the
defendant the agent was authorized to grant such license on all
policies issued by him. The court held that under such circ-
cumstances the policy did not become void. They give as
their reason that under the circumstances the local agent
might be deemed the secretary of the company for the pur-
pose of making such endorsement—a better reason in my
judgment would have been that under the circumstances the
company was estopped to set up such defense.

In Pelkington et al. v. National Insurance Co., 55 Mo., 176,
the court say:

"The court by its ruling in striking out the replication,
"virtually decided that it was absolutely necessary to obtain
"the written endorsement of the company's consent to the
"additional insurance before any recovery could be had. There
"are cases which undoubtedly sustain this proposition, but the
"tendency of the modern decisions is to relax and modify this
"stringent doctrine. It is emphatically averred that the agent
"was duly notified of the subsequent insurance and assented
"to the same. Notice to the agent was notice to the princi-
"pal, and the company was bound by that notice. When the

"assured has notified a company that he has procured addi-
"tional insurance, it is the duty of the company, if it does not
"intend to be further bound or to continue the risk, to ex-
"press its dissent and not allow the party to repose in fancied
"security to be victimized in case of loss. It is unconscientious
"to retain the premium and affirm the validity of the contract
"whilst no risk is imminent, but the very moment that a loss
"occurs, to then repudiate all liability and claim a forfeiture.
"If the endorsement is not made upon notice duly given a
"waiver will be presumed in the absence of any dissent. If
"a party by his silence directly leads another to act to his
"injury, he will not be permitted after the injury has hap-
"pened to then allege anything to the contrary, for he, who
"will not speak when he should, will not be allowed to speak
"when he would."

The following authorities which we have examined seem to
be in accord with those from which we have so fully quoted:
Richmond v. Niagara Falls Ins. Co., 79 N. Y., 230; Farnum
v. Phœnix Ins. Co., 83 Cal., 246; Viele v. Germania Ins. Co.,
26 Iowa, 9; Morrison v. Ins. Co., 69 Tex., 353; Horwitz v.
Equitable M. Ins. Co., 40 Mo., 557; Hayward v. Nat'l Ins. Co.,
52 Mo., 181; Thompson v. St. Louis M. L. Ins. Co., 52 Mo.,
473; N. E. Fire & M. Ins. Co. v. Schittler, 38 Ills., 168; Rus-
sell v. State Ins. Co., 55 Mo., 585; Insurance Co. v. Young,
58 Ala., 476; Insurance Co. v. Earle, 33 Mich., 153; Pierce
v. Ins. Co., 50 N. H., 297; Jones v. Marine Ins. Co., 43 Wis.,
111; Ins. Co. v. Lyons, 38 Tex., 253; 2nd Wood on Insurance,
Secs. 382-392-395.

The fact that the policy here contains the provision that
neither the agent nor any other person except the defendant's
secretary have the authority to waive, modify or strike from
the policy any of its terms and conditions, does not with res-
pect to the matter under discussion, add much if any force to
the provision set forth in the earlier portion of the policy,
to the effect that if the assured should procure additional
insurance without the written consent of defendant endorsed
upon the policy, it, the policy, should become and be abso-
lutely null and void. This latter provision is in effect but a

provision that the person who has the power to give the consent to additional insurance must evidence it in writing. The cases we have already cited show that consent not endorsed in writing on the policy, when established, will bind the company as effectually and as fully as would the written consent, when acted and relied upon by the assured. The ground upon which the company is held liable under policies like the one before us for the acts of its agent in the exercise of a lawful power, but not in the manner provided by the policy, is that the agent represents the company, and notice to him is notice to the company, and through him the company has knowledge of every fact relating to the matter of which the agent has knowledge, and in failing to repudiate the acts of the agent, the company will be held to have ratified them or, at least, having failed to speak when it should it will not be permitted to speak when it would. It is not only by force of the fact that the agent consented to the additional insurance that the company is held bound, but as the law imputes the knowledge of the agent to the principal, it must be held to have ratified the consent given by him though not in the manner specified by the policy. As said by the Supreme Court of Michigan in a similar case:

"The condition literally applied would prevent any unindorsed consent by the company itself by instruction of its board or by act of its officers as effectually as by any one else. And the case seems to settle down to the simple question whether a person who has agreed that he will only contract by writing in a certain way precludes himself from making a parol bargain to change it. The answer is manifest. A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it." Insurance Co. v. Earle, 33 Mich., 153; Insurance Co. v. McCrea, 8 Lea, 524; see also Farnum v. Phœnix Ins. Co., 83 Cal., at p. 261.

There is another matter in this connection to which I will briefly allude:

In my opinion it is not competent for the defendant company to so tie its own hands and those of its general agents as is attempted by the restrictive clause in this policy. The clause is broad enough to include not only every officer and agent of the company excepting only its secretary, but even the company itself. In my opinion such attempted restrictions are ineffectual, and ought not to be and will not be upheld.

The authorities already cited and quoted from, in effect, uphold this view of the matter; the following authorities state the proposition broadly: Renier v. The Dwelling House Ins. Co., 74 Wis., 89; German Ins. Co. v. Gray, 43 Kans., 498; Lamberton v. Connecticut F. Ins. Co., 39 Minn., 129; Wilcutts v. The N. W. M. L. Ins. Co., 81 Ind., 300; Gares v. The St. Paul F. & M. Ins. Co., 43 Wis., 108; American Ins. Co. v. Gallatin, 48 Wis., 37; Phœnix Ins. Co. v. Munger, 30 Pac., 123.

Upon the argument and in their briefs counsel for defendant in error called our attention to many authorities unmistakably and emphatically holding that under the terms of a policy like the one in suit, unless the consent to additional insurance is endorsed upon the policy, it becomes void. It would be useless to attempt to reconcile these cases with the cases hereinbefore cited, the conflict between them is irreconcilable; in fact it is by no means easy to reconcile all the cases of the same State; in many it would seem that the courts in order to preserve consistency have from the facts drawn distinctions more fanciful than substantial. It would serve no useful purpose to herein review all the cases cited to us by defendant in error, the review of a few will answer our purpose.

In the case of Cleaver v. Traders Ins. Co., 65 Mich., 527, the policy substantially contained the conditions of the policy before us, with respect to additional insurance; such insurance was obtained through the assistance of the company's agent but was not endorsed upon the policy, and no notice was given

by the agent to the company; it was held that plaintiff could not recover, and a judgment in his favor was reversed and the cause remanded. This case may perhaps be distinguishable from the case before us, by reason of the fact that there the evidence showed that the agent had no authority to consent to additional insurance, while here I have no doubt of such authority on the part of the agent. The case was remanded, and on the second trial the court directed the jury to find a verdict for defendant, and from the judgment for defendant plaintiff on this occasion appealed, and the judgment reversed. 71 Mich., 414. The reason given was that on the second trial it was made to appear that on the day of the fire the company was notified of it, and a day or so afterwards it was notified of the additional insurance; that thereafter it sent an adjuster to the place of fire to adjust and settle the loss; that in endeavoring to adjust the loss the plaintiff at the request of the adjuster spent two days of his own time and the services of another man—and say the court: "This information, time, and labor asked by the company and furnished by the plaintiff, was wholly unnecessary under the defense made in this suit." Taking the whole case, both in 65th and 71st Mich., I regard it as authority for the plaintiff here, because in this case, the plaintiff after handing the two policies to the adjuster, gave two or more days of his time to the adjuster in endeavoring to furnish him proper information, etc., but notwithstanding this my judgment is that the case cited when first before the court should have been affirmed upon the ground of notice to defendant through its agent, and no dissent, the company thereby being estopped. Another strong case cited by defendant in error—Walsh v. Hartford F. I. Co., 73 N. Y., 5. In that case the condition was "that no officer, agent or representative of the company shall be held to have waived any of the terms and conditions of the policy unless such waiver shall be endorsed hereon in writing." And the court held the condition binding and that it prescribed the only way in which the agent could manifest his consent. It was also held that the plaintiff was presumed to have known the conditions of the policy and was bound by them. If it

be true that a policy holder is bound by all the conditions of his policy, and is presumed to know what they are, that is to understand them, it seems to me that if this idea is to be pushed to its limit, he, the policy-holder, who is generally a layman, is charged with a rather heavy responsibility, in view of the fact that there is such a wide divergence of opinion among lawyers and judges as to the meaning and effect of these conditions, as the history of the case just cited abundantly proves. In that case, the trial court held that the agent could only consent by endorsement in writing, and defendant had judgment. On appeal to the general term of Supreme Court, fourth department, before a full bench of three justices, it was unanimously held just the contrary. 9th Hun., 421; and then on appeal to the court of appeals four judges held that the trial court was right in its understanding of the condition, and the Supreme Court wrong, and three judges held that the Supreme Court was right and the trial court wrong.

In this case it was admitted both in the Supreme Court and in the court of appeals that the agent who gave consent but did not endorse, was a general agent of the company. Yet the same court of appeals in Weed v. L. & L. Fire Ins. Co., 116 N. Y., at page 117, say, "notwithstanding the provisions of the "policy that anything less than a distinct, specific agreement "clearly expressed and endorsed on the policy, should not be "considered as a waiver of any printed or written condition or "restriction therein, the court recognize and affirm the law "as settled in this State that such condition can be dispensed "with by the company or its general agents by oral consent as "well as by writing." The conditions in both policies were substantially to the same effect.

We are also referred to Hankins v. Ins. Co., 70 Wis., 1, and to Knudson v. Hecla Fire Ins. Co., 75 Wis., 198. In the first case, the condition was that if the property should become encumbered without the consent of the defendant's secretary endorsed upon it, it should become void; and also this clause: "It is expressly provided that no officer, agent or "employe, or any person or persons except the secretary, in

"writing, can in any manner waive either of the conditions of "the policy which is made and accepted upon the above ex- "press conditions." The case may be distinguished from the case before us from the fact that here the agent Stitzer had the right to consent to additional insurance. As to the condition above quoted, I have only this to say, that a substantially similar condition was in the Renier case, 74 Wis., 89, held to be ineffectual as a restriction upon the general officers and agents of the company. In the other case in 75 Wis., there was no proof of loss, and under the facts no waiver. I am not inclined to think the case much in point. Of the cases from California cited, viz.: 55 Cal., 408, is not clearly in point, and those in 66 Cal., 6, and 67 Cal., 621, are I think clearly opposed to Farnum v. Ins. Co., 83 Cal., 246.

On the whole I am of opinion that this matter did not constitute a defense to the action, and that the court should have so instructed the jury; and that the 2nd, 3rd, 5th and 7th grounds of defendant's motion for a new trial afford no sufficient reason for vacating the verdict and granting a new trial. The instruction that "the defendant must show by a preponderance of the evidence that it has not waived its right," with respect to the additional insurance, was erroneous, but in our view of the case not prejudicial, because the matter should not have been submitted to the jury at all.

3. The 4th and 6th grounds of defendant's motion for a new trial were based upon the clause in the policy requiring proofs of loss to be furnished by assured. The clause is fully stated in the statement of facts hereto appended. The facts clearly established with reference to this matter are as follows:

On the day of the fire the agent of the company, being informed of the fire by plaintiff, by letter, notified the defendant both at Chicago and Denver of the loss. Within a few days thereafter the defendant sent an adjuster, Mr. Norton, to Cheyenne, to investigate the loss, and with power to adjust and settle it. This must be deemed a sufficient compliance with the requirement of immediate notice of loss; any notice that produces such a result is sufficient without reference to

its form. Insurance Co. of N. A. v. McDowell, 50 Ill., at p. 129. Thereafter the adjuster arrived and was engaged for two and perhaps three days in investigating the loss and endeavoring to adjust it with the plaintiff; being called away, he notified plaintiff of his intended departure without completing the adjustment, and just before leaving plaintiff stated to him (quoting from the record), "Mr. Norton, I don't "know anything about a fire, never had any experience about "it; I want you to tell me what I have to do. Mr. Baird "said I have to have some papers and I don't know what to "do." He (the adjuster) said, "You don't need anything at "all, don't need any papers; I have all the company need in "this book, that's all they want; you don't need to make out "any papers at all. He left, promised to come back again, "he did not come."

There is no doubt whatever in my mind that under these facts it must be held that the entire provision of the policy with respect to proofs of loss, magistrate's certificate was waived. I can conceive of no acts or declarations of the company or its agents which would more completely constitute a waiver than these. It will not do to say that the plaintiff had not the right to rely upon this parol waiver on the part of the adjusting agent, because the policy expressly denied his authority thereto. He was fully authorized and empowered to "adjust and settle the loss." And this general authority was wholly and entirely inconsistent with the restriction. An insurance company, and especially a foreign insurance company, in negotiating insurance, adjusting and settling losses, must act through its agents, if it acts at all. To hold that in such negotiations between such general agents, or agents possessing such general authority, and the assured, the latter is bound, but the company is not, because of having incapacitated itself and them by such restrictions is in effect to hold that there is no mutuality in such negotiations and that the only power given to such general agents is to obtain the premiums and then defeat the enforcement of the policies upon which they were paid. Renier v. Ins. Co., 74 Wis., 99; Ætna Ins. Co. v. S——, 85 Ind., 362; E. T. Fire Ins. Co. v.

Dyches, 56 Tex., 571; Ligons Admrs. v. Ins. Co., 87 Tenn., 341. But this is not all. After the adjuster left, though promising to return and complete the matter, he did not do so. And for four weeks the plaintiff in person and through his attorney, was constantly importuning the agent, Mr. Stitzer, to know what he should do, and what the company intended to do about the loss, but received no satisfactory response. On the 7th day of February, 1891, he, the plaintiff, forwarded to the company at the City of Chicago, an affidavit and schedule of the property destroyed, which was accompanied by a letter from plaintiff's attorney. This was duly received by the company and referred to its general agents at Denver, and they on February 28th acknowledged receipt to plaintiff. The substance of this affidavit and the letter of plaintiff's attorney and the general agent's letter are hereinbefore set forth and need not be here repeated. Subsequent to the agent's letter of February 28th, nothing further was done until this suit was commenced April 16th, 1891. Under these facts it is claimed on the one hand that the affidavit and schedule were at least attempted proofs of loss, and inasmuch as the defendant did not specifically point out the defects therein, it is estopped to raise the objections. On the other hand, it is contended that since the affidavit and schedule did not comply with the terms of the policy requiring proofs of loss therefore, the defendant rightly treated them as notice of loss, and as there was no further correspondence between the parties and plaintiff did not at any time attempt to correct defendant in its belief and statement that they were intended as notice of loss, plaintiff thereby acquiesced in what was done by defendant, and that it would be unreasonable to allow him now to assert that he sent defective proofs and that because defendant did not specifically object thereto, the defects were waived.

If there was anything in the facts of this case, or anything in the affidavit of plaintiff and schedule of property attached thereto, or in the accompanying letter of plaintiff's attorney, by which any reasonable man would be justified in the fair belief that they were sent in compliance with the provisions

of the policy that "persons sustaining loss or damage by fire "shall forthwith give notice thereof to this company in writ-"ing," there might be some foundation for defendant's contention. But there is no such fact to be found in the entire record. On the contrary the facts lead to the conclusion that they were intended as proofs of loss, and nothing less, and I am wholly unable to understand how any fairly intelligent man could have arrived at any other conclusion. These identical agents who wrote the letter stating that they "presumed" the affidavit, etc., were sent as notice of loss, had six weeks prior thereto upon being notified of the fire by Mr. Stitzer; sent an adjuster from Denver to Cheyenne to adjust and settle the loss. Why under such circumstances should they imagine for a moment that plaintiff desired to give further notice of the fire. What is there in the requirement of the policy as to notice which would induce any one to believe that such an affidavit covering a page and a half or more of type-written matter, attached to which was a schedule setting forth the description and the cost price of over two hundred items of property, was intended simply to be a notice of the fact that a fire had occurred and destroyed the insured property. A notification in fifteen or twenty words, not sworn to, would have been ample to fully comply with the requirement of the policy in this respect. I am not much impressed with defendant's claims on this proposition. On the contrary it seems to me that the plaintiff may have very properly, on receipt of the letter from these general agents, come to the conclusion that defendant did not intend to deal fairly with him in the settlement of this matter, and that he would only recover the amount of his loss at the end of a law suit. Defendant has not in this case treated said affidavit and schedule as simply notice of loss. In its third defense it charges plaintiff with false swearing, and that such false swearing was done through this affidavit by plaintiff "knowingly and wilfully and "for the purpose of misleading and deceiving this defendant "in relation to the amount of loss by him sustained." * * * "and that the said plaintiff for the purpose of carrying out said "fraud so by him attempted to be perpetrated, furnished this

"defendant the said false affidavits and oaths by him made as "aforesaid." If they were intended and are to be regarded as simply notice of loss, and not as proofs of loss, how could the fraud charged be predicated upon them. It seems to me that defendant in this defense practically admits that they were intended to be proofs of loss upon which it was expected defendant would act in adjusting and settling the loss. The letter accompanying the proofs closed with these words: "If "you wish any information in addition to what is contained in "the enclosed it will be gladly furnished you." No response was made to this, no suggestion that additional information was desired, but rather the intimation that plaintiff had to pursue his own course without assistance or suggestion from the defendant. Most abundant good faith is the very essence of these contracts of insurance, and that requires perfect candor and openness on the part of each of the parties. Insurance companies are just as much bound as the assured to endeavor heartily and strenuously to bring about a fair and a just and equitable settlement of loss incurred, for which they have contracted to indemnify the assured, and they have no sort of right when such loss has occurred to stand aloof and cast obstacles in the way of rather than assist in bringing about such settlement.

It follows that there was nothing in the 4th and 6th grounds of defendant's motion for a new trial which would have justified the court in sustaining it. 2nd May on Insurance, Sec. 468-469B-474-475; Ins. Co. of N. A. v. Hope, 58 Ill., 78; Jones v. Mechanics F. Ins. Co., 36 N. J. L., 29, at p. 38.

The 14th ground for defendant's motion for a new trial challenges as error the action of the trial court in permitting Sam'l Kahn, a witness for plaintiff, to refresh his memory from the schedule of property destroyed furnished defendant by plaintiff. I think there was no error in this. The witness was the plaintiff's book-keeper up to the time of the fire. At the fire the plaintiff's books of account and invoices of purchases were destroyed. After the fire for the purpose of enabling him to make up a list of the goods on hand at the time of the fire the plaintiff obtained from the merchants from whom

he had purchased goods duplicate invoices thereof, and with these invoices and from recollection of what was on hand and of the condition of the stock of goods, the plaintiff and witness within three weeks of the fire made up this schedule. It certainly was desirable that such a schedule should have been made up, as much for the benefit of defendant as of plaintiff. The evidence in no manner whatever impeaches its integrity or casts any suspicion upon it. On the contrary it appears to have been made fairly and in an honest desire to do the right thing in what seems to me under the circumstances the best possible way. Upon the trial the witness was examined and re-examined and again and again cross-examined about this matter, and the jury fully apprised of all the facts surrounding it. I am convinced the court was clearly right in permitting the witness testifying a year after the schedule was made, to refer to it and refresh his memory from it. 1st Greenleaf on Evidence, Sec. 436 to 439; See note to Ins. Co. v. Weides, L. Ed., Book 20, U. S. S. C., p. 894.

The 15th ground in the motion for a new trial alleges error on the part of the court in permitting said witness to read the said schedule to the jury in response to a question as to the amount of goods in the store at the time of the fire. For the reasons just stated in discussing the 14th ground of said motion, I perceive no error in this.

The 16th ground of said motion challenges as error the ruling of the court in permitting the said witness to enumerate and state the value of certain articles alleged to have been destroyed by the fire which were not included in the plaintiff's proofs of loss. There was no error in this. The defendant promised to indemnify the plaintiff to the extent of $1,500.00 for loss upon his stock of goods, not merely those stated in the proofs of loss, but those which he had in his store at the time of the fire.

The 17th ground of said motion alleges error in permitting the affidavit and schedule offered as proofs of loss to be read to the jury. These papers were certainly not competent evidence of the facts therein stated, and the court very properly charged the jury that they were not to be considered as evi-

dence of the quantity and value of the property destroyed. They were however competent evidence to show compliance or attempted compliance with the requirement of the policy that proofs of loss should be furnished and there was no error in permitting them to be read to the jury.

The 18th ground of said motion alleges error in permitting Mr. Baird, a witness for plaintiff, to testify respecting certain offers of settlement made by the adjuster to plaintiff. The rule with respect to offers of compromise as stated in 1st Greenleaf on Evidence, Sec. 192, is, "that confidential over-, "tures of pacification, and any other offers or propositions be- "tween litigating parties expressly stated to be made without "prejudice are excluded on ground of public policy. An offer "of a sum by way of compromise of a claim tacitly admitted, "is receivable, unless accompanied with a caution that the "offer is confidential." Tested by this rule there can be no question that the evidence was admissible. The adjuster was not here attempting to compromise a disputed claim; so far as can be gathered from anything he did or said the claim was at least tacitly admitted. The only controversy between him and the assured was as to the amount of the claim: and his offers of settlement did not come within or even approach the rule excluding offers of compromise. Besides this, what was said and done by the adjuster was clearly admissible as tending to show a waiver of the additional insurance (Cleaver v. Ins. Co., 71 Mich., supra) and to show a waiver of the proofs of loss. There is nothing in the proposition that there was error in this matter.

It is further urged that the plaintiff was guilty of false swearing with respect to the quantity of goods destroyed and the amount of his loss. The condition of the policy is: "All fraud or attempt at fraud by false swearing or otherwise shall forfeit all claim under this policy." The rule is well settled that under such provision, to constitute fraud or false swearing there must be false statements wilfully made with respect to a material matter with the intention of thereby deceiving the insurer. Vol. 7 Am. & Eng. Enc. of Law and cases cited, p. 1047; 2 May on Insurance (3rd Ed.), Sec. 477. With es-

pecial regard to this matter of false swearing I have several times carefully read the entire evidence given upon the trial and have constantly kept in mind the fact that the trial court saw the witnesses, heard them testify, observed their manner, etc., and consequently had much better opportunity of properly judging the evidence and its effect than I could possibly have; but I have been unable to find any facts in the entire record which raise a reasonable doubt in my mind as to the good faith of the plaintiff; or any facts or circumstances which would or could have justified the trial court in vacating the verdict upon this ground.

It is true that in the affidavit of plaintiff sent as proof of loss to defendant it is stated that the stock of insured goods "was burned up and destroyed by fire on the night of the 26th of December, A. D. 1890," and also that the schedule attached to the affidavit was "a statement of each article of property burned up and opposite thereto the cost price thereof." And it is also true that literally speaking the goods were not actually "burned up and destroyed by fire." In fact, the evidence clearly shows that most of the goods were destroyed by smoke and water, and some few only damaged thereby, and it may be that a few items of the property were only slightly injured; but practically the entire stock of goods was destroyed. A large quantity of the goods were in the cellar situate just beneath the store room. A large hole was burned in the floor of the store room, so that the fire must have reached the goods in the cellar, besides the cellar was filled to overflowing with water used by the fire department in endeavoring to extinguish the fire. Under the circumstances with regard to the fire as disclosed by the evidence, it seems to me that it is altogether improbable that there could have been anything less than a total loss to all practical intents and purposes of the goods in the store. Mr. Stitzer, the defendant's agent, visited the place of the fire within six or eight hours after it occurred, in the discharge of his duty, which required him to instruct the assured to take proper care of articles not destroyed, and he testified that at that time he "saw nothing of any consequence which could be saved." The plaintiff tes-

tifying in his own behalf explained what he meant by the language used in his proofs of loss, viz.: "burned up and destroyed by fire," etc., and in view of the fact that these proofs were made after the property destroyed and damaged, and all the circumstances of the fire had been fully examined and enquired into by Mr. Stitzer the defendant's agent and also by its adjuster, I can perceive no foundation in this matter upon which to base the charge of an attempt at fraud by false swearing or otherwise.

As to the claim that the total amount of loss as stated in the proof of loss was four times greater than it actually was, I can find nothing in the evidence to sustain it. On the contrary the evidence showed that there were many articles of considerable value destroyed which were not included in the proofs. Indeed defendant alleged as one of the grounds of its motion for a new trial the fact that the court permitted over its objection the introduction of testimony to that effect.

The defendant alleged this defense in its answer filed six months or more before the trial. The adjuster a year before the trial made the same objection to settling with plaintiff, viz.: that plaintiff claimed to have lost more goods than he really had; yet upon the trial the defendant did not offer a scintilla of evidence in support of this, or any other of its defenses. It is incomprehensible that if the fact had been as alleged by defendant in its defense, that it could not at the trial have produced some evidence in support thereof.

As to the value of plaintiff's stock of goods at the time of the fire, the testimony was clear and positive that it was from $3,300.00 to $3,500.00. It is impossible to gather from the evidence that the damaged goods which remained over after the fire were worth more than $100.00 or $200.00 at the outside, and this too by including damaged meat, butter and lard, which some of the witnesses stated might be worth something for what they called "tanking purposes," and which the proof shows plaintiff threw away as utterly worthless, to his own damage, if the judgment of the witnesses was right.

It is true that plaintiff on cross-examination was not able without reference to his memorandum or list of goods which

he made soon after the fire to state the quantity and value of the different classes of goods he had in stock. Had he been able to do so he would have exhibited a very remarkable memory, so remarkable that it would be looked upon with some suspicion. I can very readily understand how a man in the business plaintiff was engaged in would have a very clear and correct idea of the value of his entire stock of goods, and at the same time be wholly unable to state from memory the number of cans of corn and number of mouse-traps, etc., which he had on hand. Had the plaintiff in this case attempted to state from recollection the exact number of cans of corn and the exact number of mouse-traps, etc., he had on hand, I should be a good deal more disposed to regard his testimony with suspicion than I am. Even if the testimony upon this question had been evenly balanced it would have been insufficient to establish the defense. A man who alleges fraud must clearly and distinctly prove the fraud he alleges, and the proof must be clear and sufficient to satisfy the mind and conscience of the existence of the fraud. It cannot be pretended that such was the case here.

In conclusion, I am satisfied from a careful review of this particular matter that the court did not grant the motion for a new trial upon this ground, and not only this, but if the court had done so its action would have been erroneous and a clear abuse of discretion. 2nd Wyo., 496.

I am of opinion that the final order entered by the court below should be reversed and that the cause should be remanded to the district court of Laramie county, with directions to enter up judgment upon the verdict, with interest from the date of its rendition for plaintiff and against defendant, with costs. Plaintiff to recover of defendant his costs in this court.

GROESBECK, C. J., and CONAWAY, J., concur.